# Ziegler & Co. et al. *versus* Handrick.

1. Where, in a feigned issue under the Sheriff's Interpleader Act, the question before the court was whether the sale of certain goods in a store, and of a horse, carriage, harness and sleigh, by A. to his brother B., was bona fide, or fraudulent as to A.'s creditors, the defendants asked the court to charge that upon the sale of such property, the purchaser should take possession exclusive of the vendor, and that a holding of possession concurrently by A. with B. was fraudulent as to the creditors of A. and void : *Held*, that the affirmance of this general proposition was properly qualified, under the evidence in the case, by adding " that it would not be concurrent possession if A. remained as clerk or merely had desk room in the store."

2. There was evidence to the effect that the horse and carriage were kept in the stable of the house in which A. lived, after, as well as before the sale ; but under an arrangement to that effect made by B. after the sale. *Held*, that the question was properly for the jury, and if they believed said evidence, it showed sufficient change of possession to pass the title, the sale being otherwise honest.

3. The defendants in the feigned issue offered witnesses to show that certain book accounts and notes retained by A. at the time of his sale to B., the face value of which, A. testified, was about $17,000, were really worth only about $500 ; for the purpose of showing that by the sale A. parted with practically all of his assets, which as alleged indicated an

intention to defraud his creditors. The court ruled that while it would admit evidence that A. had parted with all his available assets, yet it would not admit evidence of the market value of the book accounts and notes, in rebuttal, because that question had not been touched upon by the plaintiff. *Held* that although there might have been technical error in excluding this testimony, the judgment would not be reversed on this account, because, under all the circumstances, the jury could not have attached any appreciable importance to the value, real or apparent, of the assets referred to.

4. A debtor against whom numerous judgments have been entered, may make a sale and transfer of his personal property for the purpose of avoiding the necessity of a sheriff's sale, and of applying his property to the payment of the bona fide creditors whom he regards as having the strongest claim upon him. Such a transaction is not illegal.

March 18, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Wyoming county:* Of January Term, 1883, No. 291.

Feigned issue under the Sheriff's Interpleader Act, in which R. T. Handrick was plaintiff, and Edward S. Ziegler & Co. and thirteen other firms were defendants, to determine the ownership of certain personal property levied on as belonging to one E. S. Handrick.

The following are the material facts: For several years prior to September 2, 1882, E. S. Handrick kept a store in the borough of Tunkhannock. At various times from July, 1882, until November of the same year, numerous judgments were recovered against him by the above mentioned defendants. On September 2, 1882, E. S. Handrick sold his entire stock of store goods, and his horse, harness, carriage and sleigh to his brother, R. T. Handrick, who was then manager of the store.

Subsequently Ziegler & Co. and the other defendants, issued executions on their judgments against E. S. Handrick, and levied on the goods in the store and on the horse, carriage, sleigh and harness. On December 2, 1882, the sheriff's petition for an interpleader was granted and this issue awarded.

At the trial, before INGHAM, P. J., R. T. Handrick, the plaintiff, introduced evidence to show that he entered into an agreement with his brother to buy the property in question; that this was a bonâ fide agreement, in pursuance of which they took an inventory of the goods at the price which was paid for them, and that he was to pay for them ten per cent. less than the cost price. The value thus determined amounted to something over $7,000, for which he gave E. S. Handrick his judgment note, and entered at once into possession of the property; that the note thus given was transferred by E. S. Handrick to Peter M. Osterhout, his father-in-law, to secure the latter for money previously loaned to E. S. Handrick;

that R. T. Handrick had circulars distributed showing the change of ownership, put an advertisement in the county paper, opened a bank account, and had the insurance on the goods changed to his own name, and conducted the business from the time of the purchase as owner; and finally, that although E. S. Handrick remained in the store, he did so simply for the purpose of collecting unsettled accounts.

Plaintiff also produced evidence to the effect that although the horse, carriage, etc., remained in the same stable after the sale as before, this was done in pursuance of an agreement made with Peter M. Osterhout, the owner of the stable, by R. T. Handrick after the sale.

The defendants, on the other hand, set up that the sale was not bonâ fide, but was the result of an arrangement between E. S. and R. T. Handrick to defraud the former's creditors, knowing that he was on the eve of bankruptcy.

As tending to show the fraudulent character of the sale, the defendants offered to prove that thereby E. S. Handrick had disposed of all of his valuable assets, and that although the face value of the book accounts and notes retained by him aggregated a large amount, yet they were really worth less than $500. For this purpose defendants called one C. P. Miller, an officer in the bank at Tunchannock, and offered to ask him the market value of said accounts, as appearing in E. S. Handrick's ledger, and also the value of the notes and judgments. Objected to.

The Court. "We would admit evidence that he had transferred to him all his valuable assets, but as no evidence has been given on the part of the plaintiff, as to the market value of the book accounts, notes and judgments, but only evidence as to what they show upon their face, we deem it incompetent for the defence to enter into that question of the market value."

Offers rejected. Exceptions. (38th and 39th assignments of error.)

The plaintiff asked the court to instruct the jury:

*Tenth.* "If the jury believe there was a bonâ fide sale of the goods in dispute to R. T. Handrick, and such delivery of possession or other overt change of ownership as the nature of the property and the circumstances of the case admitted, then such delivery of possession is sufficient in law. In such case it is only necessary that the vendee should assume the control of the subject so as reasonably to indicate to all concerned the change of ownership." Affirmed. (23d assignment of error.)

Defendants submitted, inter alia, the following points:

1. "If the jury believe that E. S. Handrick was deeply indebted at the time of the alleged transfer of his property to

his brother, R. T. Handrick, and R. T. Handrick did not have the means of paying for it, the jury may infer that the same was done to hinder, delay and defraud the creditors of the said E. S. Handrick. A presumption of fraud is thus created which the party who denies it must repel by clear evidence, or else stand convicted. When creditors are about to be cheated, it is very uncommon for the perpetrators to proclaim their purpose and call in witnesses to see it done. A resort to presumptive evidence therefore becomes absolutely necessary to protect the rights of honest men from this as from other invasions."

*Answer.*— "If the jury believe that E. S. Handrick was deeply indebted and on the eve of bankruptcy or insolvency at the time of the alleged transfer of his property to his brother, R. T. Handrick, and it was known that R. T. Handrick did not have the means of paying for it, the jury may consider this presumptive evidence that the same was done to hinder, delay and defraud the creditors; if it is not overbalanced by the rest of the evidence in the case, the transfer must be held to be fraudulent and void. But we do not propose to say how much evidence is required to raise a conclusive presumption of actual fraud in this case. The jury must weigh on the one hand the facts which are adduced to prove it, and on the other the nature of the accusation and the improbability of its truth, arising from reasons *à priori* together with the exculpatory facts and then decide according as they find the preponderance to be." (2d assignment of error.)

3. "If the jury agree that R. T. Handrick was not moved to the purchase of the property of E. S. Handrick by honest and upright motives, that if he knew of the indebtedness of E. S. Handrick, and took the property to place it beyond reach, to hinder, delay and defraud the creditors of E. S. Handrick, it would be fraudulent to such creditors." Affirmed.

9. "The law requires upon the sale of personal property such as this is claimed to be, that the purchaser should take possession exclusive of the vendor, that a holding of possession concurrently by E. S. Handrick and R. T. Handrick was fraudulent as to the creditors of E. S. Handrick, and void."

*Answer.*—"This point we affirm as a general principle, but say at the same time that it would not be concurrent possession if E. S. Handrick remained as a clerk, or merely had desk room in the store." (10th assignment of error.)

10. "If the jury believe that the horse, wagon and harness were in the barn upon the premises upon which E. S. Handrick resided, and upon which R. T. Handrick did not reside or have control at the time of the alleged sale, and the property was thus situated at the time of the levy by the sheriff, there

was no such change of possession as the law required, and the sale as to the property specified was fraudulent, and the verdict of the jury must be in favor of the defendants for at least that much of the property."

*Answer.*—" To this we answer that we submit all these facts to the jury on the evidence, upon the same legal principles that we have already stated in reference to the other property." (11th assignment of error.)

11. " That under the whole evidence in the case the verdict of the jury must be for the defendants."

*Answer.*—" We do not affirm this point. To affirm this would be to take the case away from the jury and decide it ourselves. We propose to submit the case to the jury, under the evidence." (12th assignment of error.)

The court in its general charge instructed the jury, inter alia, as follows: " Now, goods that are susceptible of transfer from hand to hand, pass by delivery, and a purchase under ordinary circumstances must pass by delivery. But where the articles sold are of that kind that it is not in accordance with the usual mode of transacting business that there should be any change of the place of the articles, then the transfer of possession is regarded as sufficient, if the party who makes the purchase takes all the usual precautions and care to make the change of possession and transfer of property known. In the case of the sale of a store of goods where it is part of the agreement that the purchaser of the goods shall continue in the same store with the expectation of carrying on business in the same manner, it is not the custom of the country, nor the usual practice among business men to make any other change than to enter into the agreement and have the purchaser step into the business and take the whole charge and control of it, and employ clerks, and go on as the former owner had gone on, giving such notice of change of ownership as the circumstances require. All this R. T. Handrick alleges that he did, and he has given you the evidence bearing upon that part of the case. . . . . . [It is a proper subject for you to consider. Did R. T. Handrick give a note for the full value of the goods, and did E. S. Handrick try to apply any portion of the purchase money to his own individual use aside from his creditors? We think that is an important inquiry for you to enter into. If his intent in making the sale was to pay Peter M. Osterhout, a bonâ fide creditor, the best way he could, there was nothing in the law which would prevent him from making a sale of his goods for that purpose, and if, having made a sale of the goods, he immediately transferred the notes for the full amount to Peter M. Osterhout, which notes were accepted by Osterhout as collateral security for his debt,

you will consider how far that has the appearance of an honest intent to pay his debts, and how far that weighs in rebutting the presumption of fraud that might arise from the time and manner that he did it."]    (28th assignment of error.) . . . . . [There has been evidence given in this case of book accounts and notes which E. S. Handrick now has in his hands, and which he has brought into court; quite a large number of notes, amounting to something over $7,000 upon their face, and book accounts in addition, which together figured up something like $17,000 on the face.    No testimony was given in this case to indicate the real market value of these various accounts.    We excluded testimony on the part of the defendants, and none was offered on the part of the plaintiffs.    So that we have no right to assume that there was much value in these book accounts or in these notes.    The evidence was only admitted as bearing upon the case in this point of view as showing that E. S. Handrick had large book accounts, and that he had a large number of notes against people, as going to confirm what he had said about having desk room in the store to settle up his accounts, and as going to show that there had been good faith in these matters so far as it would have any tendency that way."]    (32d assignment of error.)

Verdict for the plaintiff and judgment thereon; whereupon the defendants took this writ, assigning for error, inter alia, the answers to points and parts of the charge of the court as above set out in brackets.

*John A. Sittser* (with whom were *Henry Harding, Wm. M. Piatt & Sons,* and *W. E. & C. A. Little*), for plaintiffs in error.
*McCollum* and *Watson* (with whom was *F. C. Ross*), for defendant in error.

Mr. Justice Sterrett delivered the opinion of the court, April 14, 1884.

It is unnecessary to consider in detail the thirty-nine specifications of error with which this record abounds.    Very few of them require even a passing notice.    The general charge and answers of the learned judge to the thirty propositions submitted by counsel contain a very elaborate and, in the main, correct exposition of the law applicable to the facts which the testimony tended to establish.    The cardinal question of fact for the jury was, whether the sale of the personal property in controversy by E. S. Handrick to his brother, the plaintiff in the feigned issue, was *bona fide* and valid, or fraudulent and void as to the creditors of the vendor.    The numerous prayers for instruction, on every conceivable phase of the question, elicited expressions of opinion and explanations, so

fully covering the entire field of controversy that the jury could scarcely fail to have a clear understanding of the question upon which they were called to pass. In the language of defendants' third point, the jury was properly instructed that if the plaintiff "was not moved to purchase the property of E. S. Handrick by honest and upright motives; if he knew of the indebtedness of E. S. Handrick, and took the property to place it beyond reach, to hinder, delay and defraud the creditors of E. S. Handrick, it would be fraudulent as to such creditors." The defendants in their ninth point requested the court to charge that in a sale of personal property such as this is claimed to have been, "the purchaser should take possession exclusive of the vendor; that a holding of possession concurrently by E. S. Handrick and R. T. Handrick, was fraudulent as to the creditors of E. S. Handrick and void." The affirmance of this, "as a general principle," was properly qualified by the remark, "that it would not be concurrent possession if E. S. Handrick remained as a clerk or merely had desk room in the store." In view of the testimony tending to prove that the vendor retained desk room in the store for the purpose of making settlements, and collecting outstanding accounts, claims, &c., some qualification such as that was really necessary. The rule of law as to the kind of possession necessary to constitute a valid sale of personal property was clearly and correctly stated, and the testimony on that subject was quite sufficient to justify the jury in finding as they did. Indeed, as to all the property in question, except the horse, carriage, sleigh and harness, there was scarcely anything on which to base even a doubt in regard to there having been a complete change of possession; and, as to those articles the testimony was such that the learned judge was right in answering defendants' tenth point as he did, and submitting the question to the jury. The substance of the testimony is that the horse, carriage, &c., were kept at the barn of Mr. Osterhout under an arrangement made with him by the plaintiff below after the sale. If this was believed by the jury, it was a sufficient change of possession to pass title, if the sale was otherwise honest and valid. In affirming plaintiff's tenth point, the court said: "If the jury believe there was a *bona fide* sale of the goods in dispute to R. T. Handrick and such delivery of possession or other overt change of ownership as the nature of the property and the circumstances of the case admitted, then such delivery of possession is sufficient in law. In such case, it is only necessary that the vendee should assume the control of the subject so as reasonably to indicate to all concerned the change of ownership." The eleventh point of the defendants, in which the court was

requested to charge, " That under the whole evidence in the case the verdict must be for the defendants," was rightly refused.    There is nothing in the evidence that would have justified the court in saying that the sale, as to any part of the property, was fraudulent in law; and hence the case was properly submitted to the jury as a question of fact upon all the testimony before them.    The only matter, in relation to which we have any doubt, is the rejection of the offers complained of in the 38th and 39th specifications, in connection with that portion of the charge covered by the 32d assignment of error.    When, as in this case, a contract is assailed on the ground of fraud, great latitude is allowed in the admission of testimony tending to prove the fact; and, perhaps the offers referred to come within the rule.    But, conceding there was technical error in excluding the proposed testimony, it does not therefore follow that the judgment should be reversed. As was said in Morgan *v.* Weir, 1 Casey, 119, the party complaining must show not only that an error has been committed, but that he has been injured by it.    We are far from being satisfied that plaintiffs in error were prejudiced by the refusal of the court to permit them to prove that the notes, book accounts, &c., not included in the sale, were worth but a small percentage of their nominal value.    These assets were referred to by E. S. Handrick, in his testimony, as explanatory of his having reserved desk room in the store for the purpose of settling up, &c.    In answer to a question as to the amount of the book accounts and notes, he gave their nominal or face value, but it was not pretended by him or any one else that they were worth that or anything near that amount.    In sustaining the objection to the last offer the learned judge said he would admit evidence that E. S. Handrick had transferred to plaintiff " all his available assets, but as no evidence has been given on the part of the plaintiff as to the market value of the book accounts, notes and judgments, but only evidence as to what they show upon their face, we deem it incompetent to enter into the question of the market value."    Again, in the general charge, he substantially told the jury there was no testimony to indicate their value, and hence they had no right to assume there was much value in them.    In view of all this, in connection with the salient and uncontradicted facts of the case, it is impossible to believe the jury could have attached any appreciable importance to the value, real or apparent, of the assets referred to.    It was clearly shown by the plaintiff, and not seriously controverted by defendants that the property was inventoried and sold at its full and fair value,—for more, indeed, than it would have brought at sheriff's sale; that the avails of the sale were applied to the

[Piollet v. Simmers.]

payment of *bona fide* indebtedness of the vendor; and the evidence as to delivery and change of possession was quite sufficient to satisfy the jury on that point. The transaction was open and devoid of circumstances indicative of an intent to hinder, delay or defraud creditors. The worst that could be said of it is that the vendor intended to avoid the necessity of a sheriff's sale, and apply his property to the payment of creditors who, as he supposed, had the strongest claim upon him. There was nothing illegal in that. We discover no error in the record that calls for a reversal of the judgment.

Judgment affirmed.