# McClure et al. *versus* Forney.

1. As a general rule, a sale of personal property is not valid as against the creditors of the vendor, unless possession be delivered by the vendor in accordance with the sale. In determining the kind of possession necessary to be given, regard must be had not only to the character of the property but also to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required.

Crawford *v.* Davis, 3 Out. 576, followed.

2. An insolvent father sold his daughter a mare for a valuable consideration, which was promptly paid. The father and daughter lived together on a farm, and the mare was kept at the time of the purchase with the father's other live stock. No formal transfer of possession ever took place. The mare remained upon the farm, and was kept and used as before by the father and daughter and other members of the family. The evidence as to the extent of the change of possession was conflicting. Some witnesses testified that the daughter used and treated the mare as her own property after the purchase, and that her father and brothers admitted that the mare was her property. It was testified on the other hand that after the sale the father used the mare as before, as one witness said, "most all the time;" that on one occasion he claimed to own her and offered to sell her as his property, and that the blacksmith's bill for shoeing her was charged to his account. About a year after the sale, the father and daughter moved to another farm and took with them the mare which was used and kept as before. Some months later, the father and daughter separated, the daughter moving

[McClure et al. v. Forney.]

to another farm and taking the mare with her. The father continued, however, to occasionally use the mare, and while in his possession, the mare was levied upon by one of his judgment creditors and sold as his property.

In an action of trespass by the daughter against the judgment creditor and the constable, the court submitted the question of ownership to the jury as one of fact, and charged that if the daughter used, treated and claimed the mare as her own after the sale, and took it with her after her separation from her father, such possession would give her a valid title to the mare as against her father's creditors, and this notwithstanding the fact that the father borrowed the mare from her and used it occasionally.

*Held*, not to be error, and that the case was properly submitted to the jury.

October 22d, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Washington county* : Of October and November Term, 1884, No. 86.

This was an action of trespass, by Emma Forney against R. B. McClure and W. H. Johnston, to recover damages for the alleged illegal seizure by the defendants of a mare belonging to the plaintiff. Plea, not guilty.

On the trial, before HART, P. J., the following facts appeared : Prior to the 1st of April, 1878, the mare in question was the property of Jonathan Forney, who was at that time indebted to R. B. McClure on a running account, upon which suit was brought and judgment obtained by McClure against Forney, on May 4th, 1878, for $69.82. On or about May 1st, 1878, Jonathan Forney who was at that time insolvent, sold the said mare to his daughter Emma Forney for $75, which was paid on the conclusion of the contract. At that time, Emma was living with her father on a farm, known as the Stewart farm, in which Jonathan Forney owned the life estate and Emma the remainder. Previous to the sale, the mare had been kept on the farm with the other live stock of Jonathan Forney. No formal transfer of possession took place. The mare was kept and used after the sale as before, but it was shown that thenceforth Emma used the mare as her own property and claimed its ownership. The mare continued on this farm. being used by various members of the family, until the spring of 1879, when the plaintiff and her father moved to another farm owned by one Brown, and took the mare with them. Here the plaintiff remained until June, 1879, when she separated from her father and moved to her brother's farm in West Virginia, taking the mare with her. Her father subsequently returned to the Stewart farm, which was situated about three quarters of a mile from the brother's farm, and occasionally borrowed and used the mare. The testimony as

to the bona fides of the sale and as to the extent of the change of possession was conflicting.

The plaintiff testified: "It was in the spring of 1878 when I got the mare. In the spring of 1878 when I left the farm the mare was kept there with the rest of the stock on the farm; it was my father's stock; it was kept in that condition until I went to Brown's. I went to Brown's in February, 1879. In February, 1879, after the sale he (Jonathan Forney) moved to the Brown property in Middletown; I went with him; he rented part of the house. He did not rent the stable and barn; Brown may have let him have stabling room; he did not have it rented. I do not know what he used as a stable; he used an out-building; there is a pretty large coal-house that he hitched in generally. I stayed there until about the middle of June, 1879. This mare was taken to that farm and kept there while I stayed there; my father had other horses there; two other horses. I do not recollect how they were kept. While I was there, before I went to the Virginia farm, she was kept there on the place. I do not recollect how they were kept; he had other horses there; I do not recollect of their being in the stable; he fed my mare when he used her, and when he rode her I fed her sometimes myself; she was kept there in the large coal house, hitched in there; and sometimes let out on the farm with Mr. Brown's horses. My father kept his two horses with Mr. Brown's horses. When I went to Virginia I took the mare with me. Father stayed on the Brown farm until 1881; he lived there. When I went to the Virginia farm, I kept my mare on my brother's farm where I stayed. I went to Brown's farm in February and stayed until about the following June, I went then to my brother's farm. I did not go to my own farm. During the time my father stayed at Brown's my brother kept the mare there; I do not recollect of any of my father's property being there; I lent the mare to father sometimes to ride up to Brown's and he would come back and leave her with me; I always had her when I wanted her and would get her from my brother's or any of them; I could get her when my father wanted to use her. I cannot recollect of father's having her at Brown's any time. He did not have her at the Brown farm nearly all the time; he did have her occasionally; I had her in my possession, and would loan her to him sometimes; he did not keep her more than me."

Other corroborating testimony was offered to the effect that the mare was chiefly used by the plaintiff; that while the mare was occasionally used after the alleged sale by the plaintiff's father, it was with the plaintiff's permission; that

[McClure et al. v. Forney.]

various members of the Forney family had admitted that the mare belonged to Emma.

The defendant's witnesses testified substantially that subsequent to the alleged sale the mare was frequently used by Jonathan Forney; that she was the general riding horse of the Forney family; that plaintiff's father had claimed to be the owner of the mare and had offered to sell her as his property; that he attended to her shoeing and that the blacksmith's bill for this service was charged to his account. According to one witness, Jonathan Forney "generally" rode the mare; according to another "most all the time." Another witness testified that whenever he saw Forney he was almost always using the mare. Much contradictory and confirmatory testimony was given by both sides.

On February 7th, 1882, McClure issued an execution on his judgment against Jonathan Forney, and the constable, W. H. Johnston, in whose hands the levy was placed, seized a team of horses, which Jonathan Forney was driving, one of which was the mare in question. The plaintiff promptly notified the constable of her claim to the ownership of the mare, but the constable, notwithstanding said notice, sold the mare in satisfaction of the McClure judgment. Whereupon, Emma Forney brought this action of trespass.

The defendants presented the following point:

2. It appearing from the evidence on the part of the plaintiff that at the time of the alleged transfer of the mare to her by her father, the latter was largely indebted, and among others, to R. B. McClure, Esq., and further that the said transfer was not accompanied or followed in a reasonable time by an actual, open, manifest, exclusive and continuous change of possession of the mare, the alleged sale even if for a full consideration was fraudulent in law, no title passed thereby to the plaintiff herein as against creditors, and the verdict should be for the defendants.

Answer. Refused, because the point asks the court to decide questions of fact, which should be submitted to the jury upon the evidence. (Exception. First assignment of error.)

The court charged the jury, inter alia, as follows: Under the circumstances of the case, there are two questions for you to determine upon the evidence. First, was the purchase of the bay mare by the plaintiff fair and bona fide, and paid for with her own funds? Second, was there such a legal possession as gave her a complete title not only against her father, but against his creditors? As to the first question: if you are not satisfied, and the burden of the proof is upon her to satisfy you, that the purchase of the bay mare was a fair, bona

11 OUTERBRIDGE.—27

[McClure et al. *v.* Forney.]

fide purchase, then your verdict should be for the defendants, and you need not consider the second question. It will be for you to say if, under all the evidence, you are satisfied that Miss Forney did purchase this bay mare from her father with her own money. If you find that she did, then you will proceed to consider the second question, that is, was there such a legal possession as not only gave her the title against her father, but against his creditors? The general rule of law is that the sale must be followed up by such an open, notorious, exclusive, and continuous possession by the purchaser as is calculated to advise creditors and others of the legality of the ownership. What is such a legal ownership in any particular case must depend upon the circumstances of each particular case.

[In the present case if you are satisfied from the evidence that, while on the "Stewart farm" and after that on the "Brown farm," the plaintiff used, treated, and claimed this mare as her own, and that she took it with her in the summer of 1879 to her brother's farm in West Virginia and kept it there in her exclusive possession and ownership until it was levied on by Johnston, such possession was sufficient to give her a good title against her father's creditors and against all the world; and if her father borrowed the mare and used it occasionally for hauling or riding that could not affect the plaintiff's title.] (Exception. Fourth assignment of error.)

Verdict for plaintiff for $123.07 and judgment thereon. The defendants took this writ of error, assigning as error the answer to their second point and the portion of the charge enclosed in brackets.

*Boyd Crumrine*, for the plaintiffs in error.—To transfer title as against the creditors of the vendor or subsequent bona fida purchasers from him, an actual, visible and notorious change of possession is indispensable. This must be done by such appropriate acts, as will clearly show the vendor's intention to part with the possession of his property and transfer it to the vendee. And these acts must be so open and manifest as to make the change of possession apparent and visible. If a doubt exists, the law resolves it in favor of the creditor : Clow *v.* Woods, 5 S. & R. 275 ; Billinsgley *v.* White, 9 P. F. S. 464 ; Stanley *v.* Robbins, 36 Ver. 422; Flanagan *v.* Wood, 33 Ver. 332; Chase *v.* Ralston, 6 Casey 539. The change of possession must not be constructive or temporary, but actual and continuing : McBride *v.* McClelland, 6 W. & S. 94 ; not concurrent, but separate : Miller *v.* Garman, 19 P. F. S. 134; Brawn *v.* Keller, 7 Wright 104; and where the possession does not follow and accompany a transfer, it is a fraud in law,

[Hostetter v. City of Pittsburgh.]

without regard to the intent of the parties, and becomes a question for the court and not for the jury: Young v. McClure. 2 W. & S. 147; Dewart v. Clement, 12 Wr. 413; McKibbin v. Martin, 14 P. F. S. 352; Garman v. Cooper, 22 P. F. S. 32. As therefore the plaintiffs' case failed to establish any change of possession, but on the contrary affirmatively showed that the vendor's possession continued until the time of our levy, this case should have been withdrawn from the jury, and a verdict directed in our favor. See cases cited above, and also Crowley v. Irvin, 1 Pennyp. 227, which is on all fours with this case.

*M. C. Acheson* (with him *A. W. Acheson*) for the defendant in error. Under the circumstances of this case, and with the conflicting testimony before it, the court could not withdraw the case from the jury. It was fairly submitted under proper instructions: McKibbin v. Martin, 14 P. F. S. 352; Evans v. Scott, 8 Norris 138; Crawford v. Davis, 3 Out. 578.

The opinion of the court was filed November 3d, 1884.

PER CURIAM. It was said in Crawford v. Davis, 3 Out. 576, "in determining the kind of possession necessary to be given to the vendee to be good against the creditors of the vendor, regard must be had not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required." We reaffirm this as a correct statement of the law. The ruling of the court below is not in conflict therewith. The allegations of fraud in fact were for the jury and were properly submitted.

Judgment affirmed.