## JAMES PRESSEL v. ALEXANDER BICE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 20, 1891—Decided May 4, 1891.

(a) Dodson, in payment of a bona-fide indebtedness, transferred to Pressel a portable saw-mill, then sawing timber on Pressel's farm, where it afterward remained, operated by a son of Dodson to whom it was leased by Pressel.  Subsequently, the engine of the mill was levied upon and sold for a debt of Dodson contracted prior to the transfer:

1. The fact that the property was actually on the farm of Pressel at the time of its transfer, justified the court in submitting to the jury the question whether, in view of the nature of the transaction, the position of the parties, and the character and intended use of the property, there was a sufficient change of possession.

2. A justice of the peace has jurisdiction of an action of trespass against a constable, to recover damages for the wrongful seizure and sale, as a public officer, of property belonging to another than the execution defendant:  Stamer v. Nass, 3 Gr. 240, followed; Seitzinger v. Steinberger, 12 Pa. 379, distinguished.

3. Though the judgment of the execution creditor, on which the sale was made, was for the wages of manual labor about the portable saw-mill, earned within six months before the transfer was made, it had no lien on the property, enforceable against the transferee under the act of June 13, 1883, P. L. 116.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 220 January Term 1891, Sup. Ct.; court below, No. 107 June Term 1889, C. P.

On June 10, 1889, an appeal was entered by the defendant from the judgment of an alderman in favor of James Pressel

Statement of Facts.

against Alexander Bice. On August 29, 1889, the plaintiff
filed a statement of claim in trespass for the wrongful sale by
the defendant, a constable, of a portable saw-mill engine be-
longing to the plaintiff, on execution process issued against
one James Dodson. Issue.

At the trial, on January 29, 1890, it was shown that some
time in 1887, James Dodson had bought a portable saw-mill
and appurtenances, including a steam-engine, with money bor-
rowed upon obligations on which James Pressel was a surety.
In December, 1888, Dodson was operating the saw-mill on tim-
ber on the land of Pressel, and, becoming insolvent and unable
to pay a large part of said indebtedness remaining unpaid, he
executed a written assignment of the saw-mill and appurte-
nances to Pressel. This assignment, admitted to have been
dated December 17, 1888, was lost after the trial, but, as repro-
duced in the appellant's paper-book, was as follows:

"In consideration of the money for which James Pressel is
bail for me, I hereby sell to him my saw-mill, engine, and all
belonging to it, he to leave it in my possession for one year.

                                        "JAMES DODSON."

As reproduced by the appellee, however, it was as follows:

"I hereby sell my saw mill, engine and all tools belonging
to it, to James Pressel, in consideration of what he is bail for
me to Joseph Fichtner and others, hereby leasing it to W. H.
Dodson for one year, for which he is to pay twenty-five dol-
lars as rent.                            "JAMES DODSON."

The saw-mill remained at work on Pressel's land during the
winter following the transfer, operated by W. H. Dodson, a
son of James Dodson, until Pressel leased the mill to W. H.
Dodson and his brother, at the rental of $25 per annum.

On March 30, 1889, Aloysius Dodson obtained, before a
justice of the peace, a judgment against James Dodson for
$42.92, for the wages of manual labor about said saw-mill,
earned within six months prior to the transfer to Pressel. On
an execution issued on said judgment, on April 22, 1890, after
the lease of the mill by Pressel to W. H. Dodson and his
brother, as claimed by the plaintiff, the defendant, Alexander
Bice, as constable, sold the saw-mill at constable's sale to W.
H. Dodson, for $56.

Charge of Court below.

At the close of the testimony, the court, DEAN, P. J., charged the jury in part as follows:

It has been urged upon us that here is no actual, existing debt on the part of Dodson to Pressel. But we say to you that under the circumstances it was an actual, existing indebtedness, a sufficient consideration for the transfer. If I am bail for A and he is not good and I am, and he has become unfortunate in business, I am, to all practical purposes, the debtor, and A's creditor. I am the man who would have to pay, and there is nothing wrong in A transferring to me property for the payment of the debt. Now, this is the case so far as the bona fides of the transaction is concerned, on the part of the plaintiff. He alleges a sale, a subsisting, valid indebtedness on the part of Dodson to Pressel and an attempt on the part of Dodson to pay what was, in morals and in fact, a debt on his part to Pressel.

The transfer was made. At the time of the transfer the steam engine and saw-mill were on the property of Pressel. Pressel, it seems, had made a sale or given a lease of some timber which he had; and Dodson was sawing it for him. He had already sawed three thousand or four thousand feet, intending to saw more. The transfer was made by a written agreement, a copy of which has been exhibited to you and conceded by both sides to be the agreement made between Dodson and Pressel when this transfer was made. In the same agreement Pressel agrees to lease this property to Dodson for a period of one year for the consideration of $25. It is alleged on the part of the defendant that this was a conditional sale, the title still remaining in Dodson; and therefore, that the property was still subject to levy and execution on the part of Dodson's creditors. We instruct you that if this was a conditional sale, the title was still in Dodson, and the property would not be exempt from the claims of Dodson's creditors. But the plaintiff denies that it was a conditional sale, and swears that it was an absolute sale; and the agreement so far as the terms go, does not make it a conditional sale. Pressel said on the stand, at the close of his testimony: "When I made this agreement, he being my brother-in-law, if I sold it for over $500, it was my intention to give him back what was over." But this did not make it a conditional sale. A man, because

Charge of Court below.

he chooses to have a generous intention with regard to the property that has been sold to him, does not thereby affect the absolute character of the sale, if it was, in other respects, an unconditional sale. I may buy a horse from a man for $100 in payment of a debt, intending in my own mind, or even expressing the intention, that if I sell the horse for $200, I will give him back $100. This is mere generosity and does not affect the bona fides of the transaction. So, if this was the understanding of these two brothers-in-law, that if he sold the property for more than the amount for which he was bail, he would give Dodson back the surplus, that did not affect the title to the property. It would depend altogether on Pressel's generosity, whether he would give him anything back, and Dodson could not recover it if he refused.

If there was no actual sale, if this sale was conditional or if it was a pretended sale or a colorable sale, to put the property out of Dodson and in the name of Pressel, for the purpose of hindering, delaying or defrauding the creditors of Dodson, it would not stand. The law will not tolerate any such transaction with personal property. If you should, from the weight of the evidence, find that this was only a colorable transfer, a fraudulent transaction for the mere purpose of keeping the property from the creditors of Dodson, it would be void as to creditors. The whole transaction must be declared void in court, and the property would still remain liable to seizure and sale by the creditors of Dodson.

But it is for the party alleging fraud to prove it. It is not merely to be presumed. It may be presumed from certain circumstances, but the transaction is not to be found fraudulent because it is suspicious. The circumstances must warrant the presumption. If the weight of the evidence satisfies you that it was actually fraudulent, it would not be valid; and your verdict should be for the defendant. If, on the other hand, the weight of the evidence satisfies you that there was an honest intention on the part of Pressel, when he bought, to secure payment of a liability which he had incurred by reason of his suretyship, and the property was transferred to him to indemnify him against loss which he might or would incur by reason of signing these notes, then your verdict will have to be for the plaintiff, so far as that particular question is concerned.

Charge of Court below.

But then another question will come up, and that question is whether or not the transaction is constructively fraudulent.

There are two kinds of fraud, actual fraud, which is fraud with a dishonest, corrupt, immoral intention ; and constructive fraud, a transaction which may be declared legally fraudulent; not because the party intended to defraud anybody, but because he did not do that which the law requires him, under the circumstances, to do in order to make a valid transaction. Under the statute of Elizabeth, many cases have been decided by our Supreme Court, in which it is held that a transaction is constructively fraudulent without respect at all to the intention of the parties to it. They may be entirely honest and yet may not have given the transaction those elements which are necessary to make it legal. When a man owns property and desires to sell it, he being at the time heavily in debt or insolvent, and he does sell it, actually intending at some future time to deliver it, and the purchaser pays the full price, yet the seller of the property retains possession of it as he did before, such a transaction is held to be a legal or constructive fraud, because such change of possession as the property was capable of under the circumstances was not made at the time of the purchase and sale. The transaction is good as between the parties, but fraudulent as to creditors, because the law will not permit him who owns personal property to sell it and yet retain possession of it. To do so, is to give notice to all the debtor's creditors, or to persons who want to sell to him or trust him, that he is the owner of the property, thus giving him an opportunity to defraud by creating the impression that he is the owner of the property. One in this financial condition must transfer the property which he sells, into the possession of the party who buys it.

At one time, as has been well stated by the counsel for the defendant, the rule was much more rigidly held in this state than it is to-day. Within the last twenty years there has been considerable modification of the rule. A judge who, twenty years ago, had been called on to decide a case like this, would in all probability have instructed the jury that the verdict must be for the defendant, because there was no actual, visible, open and notorious change of possession ; now there is considerable modification of the law. The Supreme Court have, in more

Charge of Court below.

than one case, held that all that is necessary now is that the parties shall make such change of possession of the property as, under the circumstances, it is reasonably capable of. If a man at one of these furnaces here, sells a large pile of pig-iron, it is only necessary for him to mark upon it the name of the purchaser, or put upon it some mark indicating the change of ownership. The purchaser would not necessarily have to take possession of the pig-iron, because it is a heavy, bulky article, not of such a nature as the purchaser would, at all times, choose to remove. If he buys it and wishes to use it just where it is, he may leave it there for some time ; and the question will then be for the jury, was such possession taken of the property as it is reasonably capable of ? But if I sell a man a horse which I have in my stable, and he leaves the horse with me and I go on using him just as I did before, although he may have paid for him, my creditors can seize and sell the horse ; the jury would find, under instructions, in such a case, that such possession as was usual and as the property was reasonably capable of, was not taken. The law would hold such a transaction as constructively fraudulent.

[Here, assuming that you find the intention of these parties entirely honest, if James Dodson had had this saw-mill and engine on his own premises and had made this sale to Pressel as claimed, and Pressel had left the property on Dodson's premises, just as it was before, I think we would be bound to hold, under the law, that there was not such possession taken of the property by Pressel as it was reasonably capable of. Certainly, in the course of a month or two, he would have had time to remove it ; but the peculiar element in this case is that the saw-mill and engine were actually on Pressel's land at the time of this alleged sale. He did not need to take the property anywhere else ; he wanted it there for the purpose of sawing some timber that he had, although he did not want to go on the mill and saw it himself. I will not undertake to say to you, in view of the character of the property, the surroundings and the intention of the parties, that such possession was not taken at the time as the property was reasonably capable of. I will leave that for you to find from the weight of the evidence. I do say, if, from the weight of the evidence, in view of the nature of the transaction and the character of the property, such

Charge of Court below.

possession was not taken of this saw-mill and engine as the property was reasonably capable of at the time, the plaintiff cannot recover. ] [1]  On the other hand, if the weight of the evidence satisfies you that Pressel did all that could reasonably be required of him, in view of the kind of property, the place it was situated, and the surroundings, the sale is not constructively fraudulent, and the plaintiff can recover.   It depends on what the weight of the evidence satisfies you of on this particular question.

The next question, then, would be the question of damages. . . . .

The defendant asks us to instruct you on certain points, which we proceed to do.

1. That this being an appeal from the judgment of an alderman, the alderman had no jurisdiction of a cause of action of this kind; and the verdict should be for the defendant.

Answer: We reserve our answer to this point.   It is purely a legal question.[4]

2. That, on the undisputed testimony in the case, Aloysius Dodson's claim was for labor within six months of the sale and transfer of this mill and engine by James Dodson to Pressel; and having a lien for his labor, he could enforce it, notwithstanding the alleged sale and transfer; and there can be no recovery.

Answer: We reserve our answer to this point.[5]

[The whole case, as we have left it to you, is for your consideration. ] [2]

—The jury returned a verdict for the plaintiff for $250, with interest from April 30, 1890.   On May 29, 1890, the questions reserved on the defendant's points, and a rule for a new trial, having been argued, an opinion was filed determining the reserved questions in favor of the plaintiff and discharging said rule; thereupon, the defendant took this appeal, specifying that the court erred:

1, 2. In the portions of the charge embraced in [ ] [1] [2]

3. In not directing a verdict for the defendant, on the ground of constructive fraud, no sufficient change of possession being shown.

4, 5. In the refusal of defendant's points.[4] [5]

Opinion of the Court.

*Mr. Martin Bell* ( with him *Mr. James H. Craig* and *Mr. George B. Bowers* ), for the appellant.

That the transfer was void per se, counsel cited : Crowley v. Irvin, 1 Penny. 232; McKibben v. Martin, 64 Pa. 353; Mc-Vicker v. May, 3 Pa. 224; Forsythe v. Matthews, 14 Pa. 103; Hugus v. Robinson, 24 Pa. 10; Dunlap v. Bournonville, 26 Pa. 72; Chase v. Ralston, 30 Pa. 539; Barr v. Reitz, 53 Pa. 256; Billingsley v. White, 59 Pa. 464; Evans v. Scott, 89 Pa. 136; Parks v. Smith, 94 Pa. 46; Pearson v. Carter, 94 Pa. 152; Rothermel v. Marr, 98 Pa. 286; Crawford v. Davis, 99 Pa. 578; Ziegler v. Handrick, 106 Pa. 87; McClure v. Forney, 107 Pa. 414; Cessna v. Nimick, 113 Pa. 71; Stull v. Weigle, 20 W. N. 98; Clow v. Woods, 5 S. & R. 281.   As to the jurisdiction of the magistrate : Seitzinger v. Steinberger, 12 Pa. 380; Stamer v. Nass, 3 Gr. 240; Zeigler v. Gram, 13 S. & R. 103.   That the transfer by Dodson to Pressel was not valid as against a labor claim : Act of June 13, 1883, P. L. 116; Clymer Co.'s Est., 17 W. N. 374.   Pardee's App., 100 Pa. 408, distinguished.

*Mr. A. V. Dively*, for the appellee.

Counsel cited : (1) Evans v. Scott, 89 Pa. 136; Parks v. Smith, 94 Pa. 46; Pearson v. Carter, 94 Pa. 156; Crawford v. Davis, 99 Pa. 576.   (4) Stamer v. Nass, 3 Gr. 240; Seitzinger v. Steinberger, 12 Pa. 380; Hobbs v. Geiss, 13 S. & R. 417; Curry v. Gilroy, 3 Phila. 424.

PER CURIAM :

The court below submitted to the jury the question whether there was such a change of the possession of the property in controversy as was reasonable under the circumstances.   The said property consisted of a steam-engine attached to a portable saw-mill.   Both were on the premises of the plaintiff at the time he purchased them from James Dodson.   Had they been upon the premises of the latter the case would have been different, and it might have been the duty of the learned judge below to instruct the jury, as a matter of law, that there was not a sufficient change of possession.   But the fact that the property was actually on Pressel's property, at the time of the sale, justified the court in submitting that matter to the jury.   The modern doctrine upon this subject appears to be

that, in determining the kind of possession necessary to be given, regard must be had, not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required: Crawford v. Davis, 99 Pa. 576; Ziegler v. Handrick, 106 Pa. 87; McClure v. Forney, 107 Pa. 414.

The allegation that the alderman had no jurisdiction is without merit. Seitzinger v. Steinberger, 12 Pa. 379, is not in point. The question decided in that case was that a justice of the peace had no jurisdiction of an action on the case against a constable for not paying rent in arrear out of the proceeds of an execution levied on goods upon the demised premises. The present suit was in trespass against the constable, to recover damages for the wrongful seizure and sale of the property. This precise point was decided in Stamer v. Nass, 3 Gr. 240, where the jurisdiction was sustained.

The matter referred to in the fifth assignment does not rise to the dignity of a labor claim, under the act of 1883, and is not worth discussing.

　　　　　　　　　　　　　　　　　Judgment affirmed.