## McCullough v. Willey, Appellant.

*Sale—Contract—Possession—Delivery—Province of court and jury.*

Where personal property sold is not susceptible of actual delivery a constructive delivery is sufficient, and it is not necessary that the vendee should do more than assume such control of it as to reasonably indicate the fact of the change of ownership. If there has been neither delivery nor the assumption of control, it may be the duty of the court to pronounce the sale void for legal fraud; but when the vendee has assumed control, the question whether the sale is bona fide is usually one of fact, and the question is whether the vendee has done all that could reasonably be expected in such a case. This is to be determined by the jury in view of the relation of the parties, and the nature, use and situation of the property.

A firm desiring to purchase certain machinery, secured the indorsement of their landlord on notes given in payment for it, and subsequently gave to the landlord an absolute bill of sale of the machinery. The machinery was of a heavy character, and was bolted to the floor of the mill. After the bill of sale was executed the landlord tagged all the machinery with tags bearing his name. Subsequently the machinery was levied upon under an execution issued by an execution creditor of the firm. The record did not make it clear whether the execution creditor's debt was incurred before or after the date of the bill of sale. *Held*, on an interpleader between the execution creditor and the landlord, that the case was for the jury, and that a verdict and judgment for the latter should be sustained.

Argued March 26, 1901. Appeal, No. 6, Jan. T., 1901, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1895, No. 1220, on verdict for plaintiff, in case of James A. McCullough v. John Henry Willey. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Sheriff's interpleader to determine ownership of personal property. Before BRÉGY, J.

This was a feigned issue upon a sheriff's interpleader under the act of April 10, 1848, in which James A. McCullough claimed to be the owner of certain spinning machinery levied upon under an execution of John Henry Willey against Josiah Crowther. No bond having been entered by the claimant, the machinery was sold by the sheriff for $2,790, which was paid into court.

The facts appear by the opinion of the Supreme Court and by the former report of the case in 192 Pa. 176.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Charles L. Lockwood,* for appellant.—The evidence discloses a transaction which was fraudulent and void on its face, as against creditors: Stephens v. Gifford, 137 Pa. 219; Goddard, Hill & Co. v. Weil & Co., 165 Pa. 419; McCullough v. Willey, 192 Pa. 176; Bentz v. Rockey, 69 Pa. 71; Connelly v. Walker, 45 Pa. 449; Thornburn v. Thompson, 192 Pa. 298.

One who claimed the absolute ownership to the sheriff will not be permitted to set up a limited interest on the trial: Meyers v. Prentzell, 33 Pa. 482; Stewart & Co. v. Wilson, 42 Pa. 450; Richardson v. Montgomery, 49 Pa. 203; Vandike v. Rosskam, 67 Pa. 330; Bissell v. Steel, 67 Pa. 443; Dale v. Pierce, 85 Pa. 474.

The goods of a defendant pledged as security for a debt may be levied upon and sold subject to the right and interest of the pledgee: Waverly Coal & Coke Co. v. McKennan, 110 Pa. 599.

The purpose of these parties was unlawful, it was to create a secret pledge of personal property, a chattel mortgage: Clow v. Woods, 5 S. & R. 275.

*John G. Johnson,* with him *John Weaver* and *John Sparhawk, Jr.,* for appellee, cited: Stephens v. Gifford, 137 Pa. 219; Goddard, Hill & Co. v. Weil & Co., 165 Pa. 419; Renninger v. Spatz, 128 Pa. 524; Evans v. Scott, 89 Pa. 136; Bell v. McCloskey, 155 Pa. 319; Pressel v. Bice, 142 Pa. 263.

OPINION BY MR. JUSTICE BROWN, July 17, 1901:

When this case was here before (192 Pa. 176), we held that "the bill of sale made by Beswick and Crowther to McCullough was absolute, and transferred the entire title of the grantors in the articles mentioned to the plaintiff, without any condition or qualification whatever." We now repeat these words of our late Brother GREEN; and the only question to be passed upon is, whether there was such actual or constructive fraud connected with the transfer as made it void when assailed by the appellant.

The transfer was made for the very proper purpose of pro-

tecting McCullough as surety for Beswick and Crowther in their purchase of machinery which they needed in conducting their business. Crowther testified: "These papers were given as security for machinery that we were buying from Meadowcroft on condition that Mr. McCullough went and indorsed the notes. Meadowcroft would not take our notes for themselves without an indorser, and we got Mr. McCullough to indorse the notes, which was satisfactory to Meadowcroft." Not a line can be found in the testimony indicating any actual fraud on the part of the firm of Beswick and Crowther or McCullough in making this transfer. On the contrary, everything done was not only consistent with the highest integrity, but certainly justified by the situation of the parties. The firm were told by Meadowcroft that, on their own credit, they could not buy, but, upon their notes indorsed by McCullough, the machinery would be sold to them. What more natural than that, under these circumstances, even if McCullough did not ask for protection, they should have offered it? It was given by the firm, as it ought to have been, and accepted by McCullough, in the absolute and unconditional transfer of the machinery, and that the latter was subsequently sold for a sum larger than was needed, cannot reasonably be urged as evidence of fraud, for it might have been sold for much less. Nearly all of us have had some experience in the sale of second-hand machinery, and its value, even when used for the briefest period, can rarely, if ever, be even approximately fixed, and not infrequently scrap iron is its only safe standard of value until actually sold. Common prudence in this case was simply observed in taking a transfer of sufficient personal property of uncertain value, and, in taking it, it was as absolutely free from actual fraud as its terms were absolute and unconditional. The learned judge below properly called the attention of the jury to the testimony on both sides, that the transfer of the property was made in good faith ; and there could not fairly have been any other finding.

Whether there was such constructive fraud on the part of McCullough and the firm of Beswick and Crowther in the transfer as now stands in the way of the former's right to recover, was submitted to the jury as a question for their determination, under sufficiently clear and intelligent instructions, and in a charge that was not inadequate upon a review of the

testimony of the four witnesses called.   The learned trial judge, after giving some illustrations of the kind of possession required by the law in the purchase of personal property, said, among other things: "If a man buys a room full of machinery and if the man who buys it is the owner of the mill, the law does not require him to take all that machinery down and take it away and then cart it back again to take possession of it.   He must take such possession of it as the material he is buying admits of. That is what is meant here by the claim of McCullough through Mr. Lord that after this machinery was bought by him he went and put tags on it—that that was the best he could do to take possession—to mark it that it was his.   You are to consider all that and say whether you think what was done by Mr. Lord for Mr. McCullough was taking such possession, as, considering the circumstances and the thing bought, was all that could be, in reason, required.   The Supreme Court have expressed the law in words which I will read to you: 'It is for the jury to find from the evidence whether the sale was made in good faith or colorable, and whether the change of possession was all which could be reasonably expected of the vendor, taking into view the character and situation of the property and the relation of the parties.' "

The building in which this machinery was located belonged to McCullough, and there was not only no reason why it should be taken elsewhere, but there were very good ones why it should remain.   The machines weighed tons; were bolted down to the floor of the mill; were of great length and covered with very fine steel wire; and appellee's tenants—his vendors, to be sure —needed the machinery in their business.   All of these conditions were properly taken into consideration by the jury.   After the execution and delivery of the transfer to McCullough, he was bound, by some act, to indicate his ownership of the property and to assume control of it, and it was for the jury to determine whether he had submitted evidence to justify a finding that he had done all that was required of him under the circumstances. That ownership was asserted over the machinery after it had been transferred, is clearly established by the testimony of Lord, who states that he " tagged all the machinery as bearing title of James A. McCullough & Company," and that, when he found some of the tags had been taken off before the sheriff's levy, he

replaced them.   Control over it was exercised in leasing it to
Beswick and Crowthers.

The following, among other authorities, sustain the correct-
ness of what was said to the jury on the subject of change of pos-
session: "It was for the jury to find from the evidence whether
the sale was in good faith or colorable, and whether the 'change
of possession was all that could reasonably be expected of the
vendor, taking into view the character and situation of the prop-
erty and relation of the parties :' Evans v. Scott, supra;"   Ren-
ninger v. Spatz, 128 Pa. 524.   "The modern doctrine upon this
subject appears to be that, in determining the kind of possession
necessary to be given, regard must be had, not only to the charac-
ter of the property, but also to the nature of the transaction, the
position of the parties, and the intended use of the property.
No such change of possession as will defeat the fair and honest ob-
ject of the parties is required: Crawford v. Davis, 99 Pa. 576 ;
Ziegler v. Handrick, 106 Pa. 87 ; McClure v. Forney, 107 Pa.
414 ;" Pressel v. Bice, 142 Pa. 263.   "The results of these cases
were summarized in Crawford v. Davis, 99 Pa. 576, where it was
said that the character of the property, the use to be made of it,
the nature and object of the transaction, the position of the par-
ties, and the usages of the trade or business are all to be con-
sidered in deciding the sufficiency of the possession taken by the
puchaser.   This was repeated in McClure v. Forney, 107 Pa.
414, and in Renninger v. Spatz, 128 Pa. 524:"   Stephens v. Gif-
ford 137 Pa. 219.   "Where personal property sold is not reason-
ably susceptible of actual delivery a constructive delivery is suffi-
cient, and it is not necessary that the vendee should do more
than assume such control of it as to reasonably indicate the fact
of the change of ownership.   If there has been neither delivery
nor the assumption of control, it may be the duty of the court
to pronounce the sale void for legal fraud ; but when the vendce
has assumed control, the question whether the sale is bona fide
is usually one of fact, and the question is whether the vendee
has done all that could reasonably be expected in such a case.
This is to be determined in view of the relation of the parties,
and the nature, use and situation of the property.   This rule
has been upheld in a long line of cases, among the later of which
is Renninger v. Spatz, 128 Pa. 524: " Goddard, Hill & Co.
v. Leopold Weil & Co. 165 Pa. 419.   To the foregoing author-

ities we need only add what was said upon this subject by the late Chief Justice GREEN in the former disposition of this case (192 Pa. 176).

Whether the judgment given by Crowther to Willey on February 18, 1896, represented any unpaid indebtedness of the firm of Beswick and Crowther due to him on October 12, 1895, the date of the transfer of the machinery, does not appear. Willey himself did not testify, and Crowther did not seem to know. If the judgment did represent any such indebtedness, it ought to have been readily ascertainable and easily proven; and, in this controversy, in which the appellant alleges a fraud upon him as a judgment creditor, he ought to have shown that his judgment represented not only indebtedness incurred since October, 1895, but included what was then due him; or, at least, some portion of it. From all that can be gathered from the record, he may have been a subsequent creditor. It was upon him to show that he was not.

There is no error here. The assignments are all overruled and the judgment is affirmed.