## In re GROEZINGER.

(District Court, M. D. Pennsylvania. October 30, 1912.)

### No. 2,223.

BANKRUPTCY (§ 178*)—BILL OF SALE—PLEDGE.

A bankrupt, being indebted to claimant, executed a judgment note payable one day after date for the amount of the indebtedness, and also a bill of sale to certain machinery. In connection therewith, claimant executed a defeasance agreeing to resell and transfer to the bankrupt such machinery whenever the amount of the note was paid, provided that such defeasance should not affect claimant's right to enforce collection of the note by legal proceedings. There was no change of possession or other act of ownership exercised by claimant after the execution of the bill of sale, except his act in insuring the machinery. Held, that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the transaction constituted a pledge in the guise of a sale, and was invalid as a legal fraud as against the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Charles Groezinger. Petition by M. M. Ruddy to reclaim certain machinery under a bill of sale. Petition denied.

Warren, Knapp & O'Malley, of Scranton, Pa., for petitioner.
Ralph W. Rymer, of Scranton, Pa., for trustee.

WITMER, District Judge. The petitioner, M. M. Ruddy, claims title to certain machinery, enumerated in a bill of sale, dated August 2, 1910, from the bankrupt to the claimant as follows:

"260 sewing machines, 3 electric motors, tables, shelving, and all other machinery, fixtures and furniture now contained in the 3rd and 4th floors of the buildings numbered and known as 6 and 8 Lackawanna avenue, in the city of Scranton, Pennsylvania."

At the time of the alleged sale or transfer of the property mentioned, and for many years previous, the bankrupt was engaged in the business of manufacturing underwear in two adjoining buildings, one of which was owned and leased to the bankrupt by the claimant; the machinery in the two contiguous buildings being used and constituting a single manufacturing plant operated by the bankrupt. It appears that at the time Groezinger owed Ruddy, the claimant, $3,699, the consideration mentioned in the writing, and that upon delivery of the paper Groezinger executed and delivered to Ruddy his judgment note for a like sum, payable one day after date, and Ruddy, in turn, signed and delivered to Groezinger the following option or agreement:

"Scranton, Pa., August 2, 1910.

"Whereas Charles Groezinger, of Scranton, Pa., has this day executed and delivered to me a judgment note for three thousand six hundred and ninety nine dollars ($3699.00) payable one day after date, and has also executed and delivered to me, a bill of sale of certain machinery, fixtures and furniture now contained in the 3rd and 4th floors of the buildings Nos. 6 and 8 Lackawanna Avenue, Scranton, Pa., for the consideration of $3699.00; Now in consideration of the premises and the further sum of one dollar to me in hand paid, I hereby agree to sell and transfer to said Charles Groezinger, the said machinery, fixtures and furniture whenever the amount of said note is paid to me, provided however that this agreement shall not affect my right to enforce the collection of said note by legal procedure.

"Witness my hand and seal this 2nd day of August 1910.

"M. M. Ruddy. [Seal.]
"In presence of: ———."

Ruddy did not take manual possession of the machinery, nor was it by him tagged, or marked in any way as his property. He had, however, before and afterwards access to all parts of Groezinger's plant, being himself engaged in business in another portion of the building leased to him. It does, however, not appear that he exercised any acts of ownership over it except that of insuring it, nor did he receive any benefit for its use other than the rental for the

building as before. The transaction was not published and was known only to a few in the confidence of the parties. The bankrupt was then indebted to some of those who are now his creditors, and his trustee, standing in the place of a judgment creditor whose debt existed at the time of the transfer, is to be regarded here as the holder of a lien by legal or equitable proceedings under section 47 of the Bankruptcy Act (Act July 1. 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]), as amended (Act June 25, 1910, c. 412, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1501]).

That it was not the intention of the parties that there should be an actual sale is not to be doubted. The property was only pledged as security for a debt. It was to be retransferred by Ruddy to Groezinger upon payment of the amount due on the judgment note. However, this cannot be regarded of much importance in the absence of actual fraud, which is not here present. That the machinery, in a measure, became security for a debt, would not impair the validity of Ruddy's title if otherwise complete. McCullough v. Willey, 200 Pa. 168, 49 Atl. 944.

Was the transaction followed by transfer of possession, either by delivery or assumption of control by the purchaser indicating to the public that a change of ownership of the property was contemplated? If not, while it may not be regarded as fraudulent in fact, it would constitute a fraud per se as against creditors and subsequent bona fide purchasers without notice. This has been held as a rule of policy for the prevention of fraud in an unbroken line of decisions from Clow v. Woods, 5 Serg. & R. (Pa.) 275, 9 Am. Dec. 346, to the latest case upon the subject. While it is true that delivery may be actual or constructive, it must in any case be evidenced by acts honestly intended to transfer the possession, as well as the title. Having due regard for the character of the property and its location and use at the time of the pretended transfer, we discover nothing from which to infer intent of delivery by Groezinger to Ruddy. In fact, there was no such delivery, nor was there such assumption of control by Ruddy, over the property in question, following the exchange of papers, as would reasonably indicate a change of ownership. The only act appearing as indicating assumption of ownership by Ruddy rests in the placing of insurance upon the property in question. To hold that such constitutes sufficient evidence of transfer of possession of personal property would encourage all kind of secret liens, resulting in interminable fraud. Disregarding the insurance, the parties to the alleged transfer have not done a thing to which they can point as indicating an intention to effect a change of ownership, and it becomes the duty of the court to pronounce the sale void for legal fraud. In the case of McCullough v. Willey, supra, so much relied upon by the petitioner, where the tenant firm gave to the landlord to secure a debt an absolute bill of sale of the machinery in the building rented, the machinery was of a heavy character and bolted to the floor of the mill. After the bill of sale was executed, the landlord tagged all the machinery with tags bearing his name. Subsequently the machinery

was levied upon under an execution issued by an execution creditor of the firm. Held that the case was for the jury.

When by the action of the parties there has been a separation of the title and possession of personal property, courts will scrutinize the transaction to determine the real intention, and but little regard will be given to the form which it has taken or the name by which it is called. The law is liberal in not requiring an actual change of possession when it will defeat the lawful purpose of the parties, but there has been no deviation from the general rule that delivery of possession is indispensable to transfer a title by the act of the owner that shall be valid against creditors. The rule applies, not only to absolute sales, but to contingent sales and mortgages. Barlow v. Fox, 203 Pa. 114, 52 Atl. 57.

The transaction being a pledge in the guise of a sale wherein the title was separated from the possession, it is invalid as against execution creditors of the bankrupt, and so is invalid against his trustee in this proceeding, to 'which the amendment of the 25th day of June, 1910, applies.

The petition is therefore denied.