KRESGE v. TAYLOR.

(Circuit Court of Appeals, Third Circuit. March 4, 1912.)

No. 1,571

SALES (§ 1*)—ACTION ON CONTRACT—TRIAL.

Defendant executed a written contract by which he agreed to pay plaintiff cost price of the salable merchandise of a bankrupt, dollar for dollar, "damaged, soiled, or out of date" at a price to be agreed on, to be figured as of the date when the store was taken over, and in addition $15,000 cash for fixtures, good will, and surrender of lease. In an action on the contract, there was evidence that there were no damaged, soiled, or out of date goods in the stock tendered. *Held* that, the jury having so found, defendant's claim that no contract was ever consummated, because no price was ever agreed on for the damaged, soiled, or out of date goods, and that the minds of the parties therefore never met, was unsustainable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. § 1.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of New Jersey.

Suit by David Taylor, as trustee in bankruptcy of the Titus Company, against Sebastian S. Kresge. Judgment for plaintiff, and defendant brings error. Affirmed.

McDermott & Fisk, for plaintiff in error.

Pitney, Hardin & Skinner, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Taylor, the trustee in bankruptcy of the Titus Company, a merchandising concern, brought suit against Sebastian S. Kresge on an alleged accepted offer made by him on March 22, 1909, wherein he agreed—

"to pay for the Philadelphia store the cost price of the salable merchandise, dollar for dollar, damaged, soiled, or out of date at a price to be agreed on, to be figured as of the date when the store is taken over, and in addition thereto the sum of fifteen thousand dollars ($15,000) cash, in full payment for the fixtures, good will, and surrender of the lease. It is understood that the offer is made conditional on my part on my obtaining the lease for ten (10) years on satisfactory terms from the landlord, and on your part on your being able to obtain the approval of the court to the acceptance of my offer."

Acceptance of the offer by the trustee was alleged to have been made orally on April 14, and in writing May 7, 1909. Kresge defended, on the ground that his offer was declined by the creditors, that he withdrew it, and that, as to the second item, viz., "damaged, soiled, or out of date at a price to be agreed on," the minds of the parties had never met, that that item was open to future negotiations, and therefore no contract was consummated.

The testimony bearing on the alleged action of the creditors in rejecting Kresge's offer, on his alleged withdrawal, and on the establishment of the conditions in the last clause by him procuring a lease and the trustee obtaining approval, was all submitted to the jury. It decided in favor of the plaintiff. Unless, therefore, the court below should have held that no enforceable contract existed between the parties, the judgment should stand. It will be noted the contract covered three separate items: First, "the cost price of the salable merchandise, dollar for dollar;" second, the merchandise, "damaged, soiled, or out of date, at a price to be agreed on;" and, third, "the sum of fifteen thousand dollars ($15,000) cash, in full payment for the fixtures, good will, and surrender of the lease." Both the first and second items were "to be figured as of the date when the store is taken over." The verdict was based on the first item, which the jury found was $3,729.58, being the inventory price of $8,935.85, less $5,206.27 realized on sale, and the third, which the contract fixed at $15,000. As to the second item, which had been interlined into the offer as originally contemplated, the judge, in his charge, said:

"Inasmuch as it was contemplated that the business was to be carried on by the trustee until it was turned over to the purchaser, and as the price to be paid for the goods was to be ascertained as of the date when the property was turned over, the application of these interlineations depended upon there being such class of goods to turn over when the sale was consummated. If none was to be turned over, such interlineations have no application. The

trustee testified that at the time that the inventory was made no such goods were included, and no such offer of such goods was contemplated. As before the date of such inventory, which was made the last three or four days of May, and which bears date June 1, 1909, the defendant had repudiated his offer and declined to accept the goods and business, the question whether there were any goods contained in the inventory which would properly fall under the classification of damaged, soiled, or out of date has only a relation to the question of damages, if you should reach that question in this case. So far as they might, under some circumstances, present the question whether, as a result of such interlineations, the minds of the parties had not definitely met, my view is that, under the facts in this case, any such question does not arise: but for the purposes of the case, and the submission of the question of fact to you, it must be held that the offer was in sufficiently definite form to constitute a contract, if it was accepted."

In view of the instructions that, if such goods as the second item contemplated existed, the jury were to make allowance for them in their verdict, and the jury having made no such allowance, and therefore found that there were no such goods when the contract matured, we must assume, as indeed, the proofs warrant us in doing, that, while such a provision existed in the contract, the intent of the parties when they were contracting was that the contract contemplated no further negotiations in that regard. As bearing on that matter the affirmative proof was that, when the interlineation was inserted, Taylor, the trustee, said to Kresge, "We will let that go; that won't amount to anything, because there won't be any of that kind of goods when the store is turned over to you;" that he immediately gave orders to the manager to get rid of such articles; that by the latter part of May there was "less than two hundred dollars worth  *  *  * stuff to be thrown aside as trash." It was shown by the letter of defendant's witness Taylor that on May 19th the unsalable goods were reduced to about $200, and as no items of unsalable goods as such were carried into the inventory, and as the verdict of the jury has adopted the summary of the inventory, and has settled as a fact that all the inventoried goods were salable and fell under the first item, we are constrained to conclude the trial judge did the defendant no harm or wrong when, in passing on the validity of the contract, he said, in the connection noted above:

"So far as they might, under some circumstances, present the question whether, as a result of such interlineations, the minds of the parties had not definitely met, my view is that, under the facts in this case, any such question does not arise; but for the purposes of the case, and the submission of the question of fact to you, it must be held that the offer was in sufficiently definite form to constitute a contract, if it was accepted."

Indeed, such a course of submitting the case to the jury would suggest itself to a trial judge. The defendant contended, and his proof was to the effect, that 20 per cent. of the inventory was damaged, soiled, or out of date merchandise, and therefore fell under the second item. This was denied by the plaintiff. The method adopted by the judge was such as to submit this question to the jury, and, if its verdict was that no damaged, soiled, or out of date goods were involved, then it would not be necessary to pass on the legal question that might have arisen, had the articles been of that nature and been embraced under clause 2. The outcome proved the wisdom of that course, for

it has eliminated the necessity of passing upon that interesting, but wholly immaterial, question, as the facts have been settled by the jury's verdict. The case stands as though there were no damaged, soiled, or out of date goods involved.

Finding no error in the case, the judgment below is affirmed.