## In re KELLETT AIRCRAFT CORPORATION.

### No. 22616.

District Court, E. D. Pennsylvania.

May 26, 1948.

Charles A. Wolfe, of Philadelphia, Pa., for Trustees.

Joseph J. Brown, of Philadelphia, Pa., for Coldaire Corp.

McGRANERY, District Judge.

This case arises on a motion to dismiss two claims growing out of a reorganization proceeding involving Kellett Aircraft Corporation. Coldaire Corporation has filed a proof of claim for Kellett's breach of contract and has brought an amended reclamation proceeding, as well, which is, in effect, proof of another claim. Lengthy hearings were held before the special master, after which the trustees in operation of Kellett filed a motion to dismiss both claims. The master recommended in substance that their motion be granted as to the debtor's alleged breach of contract but denied as to the amended reclamation petition. Briefly, the facts as found by the special master, and hereby adopted, are these:

### Findings of Fact

1. Coldaire is an Illinois corporation authorized and qualified to do business in Pennsylvania. Debtor is a corporation which, prior to April 2, 1946, was engaged in general commercial manufacturing operations, as well as in the engineering, manufacture and assembly of helicopters for the United States Army Air Forces. Coldaire and Kellett entered into two basic agreements in April and October, 1946. There is a dispute over the effect and validity of the second one. By the terms of the first contract, Kellett was to manufacture 12,500 frozen food storage and display cabinets for Coldaire in named quantities at specified prices and in accordance with design and specification furnished by Coldaire. Kellett was also to fabricate the tools necessary to such manufacture. The exact terms of the contract on this point were:

"Article I Statement of the Work"

"Kellett shall fabricate the tools * * * specified in Appendix 'B' * * * at the prices indicated therein, which tools have been determined by Kellett to be necessary and sufficient for the proper fabrication of said units in the quantities indicated * * *"

"Article III Payments"

"(b) Tools Coldaire shall make payment to Kellett for the tools as set forth in Appendix 'B' * * * upon completion thereof by Kellett and within thirty days after receipt of invoices from Kellett."

"Appendix 'B' Tools, Dies, Jigs, and Fixtures"

| Description | Price |
| --- | --- |
| For 3 cubic foot Frozen Food Storage Cabinets | $19,320.00 |
| For 12 cubic foot Frozen Food Display Cabinets | $20,940.00 |

"A detailed list of tools, dies, jigs, and fixtures and individual prices therefor will be furnished to Coldaire by Kellett at the time of invoicing as provided in Article II above."

On May 3, 1946, and on June 27, 1946, the sums provided for in Appendix B were paid by Coldaire to Kellett. This basic contract was amended twice in respects that need not be detailed. On August 23, 1946, Kellett terminated operation of all its civilian commercial contracts with the exception of those contracts under which it

was then in production. The contract with Coldaire fell into the second category. Kellett continued production of cabinets under this contract until the termination of its remaining civilian manufacturing operations on September 9, 1946. At that time it had on hand unfilled mail orders from Coldaire. On the same day, a meeting was held at the Girard Trust Company of Philadelphia, attended by the debtor's President and Vice-President, representatives of the Wilson Cabinet Company and Victor Products Company, for whom debtor had also contracted to manufacture storage cabinets, representatives of Coldaire, and representatives of the Girard Trust Company and the Reconstruction Finance Corporation, to whom debtor was heavily indebted.

2. After termination of debtor's manufacturing operations under its contract with Coldaire, negotiations took place between the attorneys for the respective parties, resulting in a new contract. The principal terms of this contract provided that upon execution of the agreement, Coldaire received (1) immediate Title to "materials, parts and work in process" listed in Exhibit A for $8,000.00. (2) A one-year option to purchase the parts and raw materials in Exhibit B, parts to cost fifty per cent of their fair replacement cost at the time of purchase by Coldaire and raw materials to cost one hundred per cent of their replacement cost. This option was to be secured by a deposit of $7,200.00 to be applied to the purchases under the option. Exhibits A and B included all the raw materials, parts and work in process on hand on September 18, 1946, and acquired by Kellett for the purpose of producing Coldaire units. The total price to Coldaire of these items would be about $128,000.00 which was approximately $152,000.00 less than their approximate value. (3) The open purchase commitments of Kellett as set forth in Exhibit C. The master regarded this as an advantage to Coldaire in what was probably a rising market for parts and materials. (4) The right to lease that part of Kellett's North Wales plant previously used for production for Coldaire, if Wilson Cabinet Company or an affiliated company did not rent it. The lease would then be "on a basis to be determined by Kellett and

Coldaire." (5) A promise from Kellett to "do everything in its power to aid Coldaire in securing the agreement of the Reconstruction Finance Corporation and Girard Trust Company to release their respective liens on raw materials and parts as purchased from time to time hereunder by Coldaire."

The "Whereas" clauses of this contract provided:

"Whereas, Kellett has heretofore stopped production and is unable or unwilling to resume production under its contract with Coldaire and White, dated April 2d, 1946, as amended, under which contract Kellett remains obligated to manufacture and deliver to Coldaire a balance in excess of 9800 units Model 3C46, and 2400 units, Model 12D46; and

"Whereas, by virtue of said action Coldaire has suffered substantial losses estimated by Coldaire to exceed $450,000; and

"Whereas, said parties desire to compromise and release said claim for damages and release all parties from any further obligations under said contract;"

Paragraph eleven of the contract was, as follows: "11. Except for the rights and obligations created hereby all contracts, claims, demands, rights, duties, obligations and liabilities existing at any time up to the time of the execution hereof between Kellett and Coldaire and/or Kellett and White are hereby mutually satisfied, discharged and released."

A duplicate and original of this agreement, executed by the parties thereto, but not having Exhibit C attached to it, was delivered by Coldaire's Philadelphia attorney to Kellett's attorney on October 17, 1946. However, Exhibit C was in existence at the time and had been mailed to and received by Coldaire's Vice-President about a week earlier.

3. On October 18, 1946, Paul R. Skilling and Effingham B. Morris, Jr., were appointed trustees of the debtor in reorganization and authorized to conduct the business. Manufacturing operations were continued for a short time under an arrangement between Coldaire and the trustees, but were then halted. On November 22, 1946, the trustees filed their petition requesting per-

962

mission to reject the agreement of October 9, and in December a Court order was entered granting the relief sought.

4. Thereafter, Coldaire attempted to obtain the tools fabricated by Kellett for production of Coldaire's cabinets and the plans, designs and drawings prepared in connection with these manufacturing operations. When this proved unsuccessful, Coldaire filed a reclamation petition requesting the release of this property and certain cabinets and condensing units, as well. In March, 1947, upon Coldaire's petition, the prayer for relief was amended to a claim for the value of the property "at the time of its wrongful conversion by trustees * * * together with damages for the unlawful detention of said property and such exemplary damages as the Court * * * may deem appropriate." Both before and after the filing of the reclamation petitions, the trustees used the tools and drawings alleged to belong to Coldaire for the purpose of manufacturing cabinets. In January, 1947, Coldaire filed a proof of claim for Kellett's breach of the April, 1946, contract. Lengthy hearings on both claims were held before the special master and the trustees have moved to dismiss both claims and have filed a counterclaim against Coldaire, as well. The principal item in the counterclaim is damage resulting from alleged breach by Coldaire of the April, 1946, contract.

### Discussion of Legal Issues

The legal issues raised by the trustees in their motion to dismiss are these: (a) As to Coldaire's claim for Kellett's alleged breach of the April, 1946, contract, the trustees' position is two-fold: rights and liabilities under the April contract were extinguished by the October, 1946, contract; i. e., the later contract was an accord and satisfaction, and that, in any event, there is no proper or legally applicable measure of damages for the alleged breach of the April contract on the evidence before the master. (b) As to the amended reclamation petition, the trustees also urge alternative positions: that there is no evidence of "conversion" or "unlawful detention" of the property, and that there is no evidence of any legally recoverable measure of damages for the alleged conversion.

The special master has filed his report and recommendations, which are, in substance, these: (a) The October, 1946, contract operated as an accord and satisfaction of any claims by Coldaire under the April, 1946, contract. Moreover, there is no basis of fact upon which a measure of damages can be applied for breach of the April contract. Therefore, the claim should be dismissed. (b) The trustees were correct in refusing to deliver the tools to Coldaire. Under applicable Pennsylvania law the sale by Kellett to Coldaire was fraudulent as to creditors because possession was not transferred, nor was there any marking of ownership or constructive delivery. Therefore, no claim for the value of the property or for exemplary damages should be allowed. However, since Coldaire paid $40,260.00 to Kellett for the tools under the April contract, and is unable to obtain them, it should be allowed a claim to that amount, if it amends its petition accordingly.

In concluding that the October contract was an accord and satisfaction of Coldaire's claim under the April contract, the special master pointed out that the question of interpretation involved is often difficult to resolve and that it has been stated that unless the evidence is "clear" it should be presumed that performance of a new promise rather than the promise itself is the bargained for satisfaction of the old cause of action. See Williston, On Contracts, Sec. 1847. However, the special master felt that this standard was met. He pointed to these factors as supporting his conclusion: that damages for breach of the April contract was an unliquidated claim; that the claim itself was in dispute; that Coldaire was substituting a contract of definite terms for a claim of uncertain amount; that the release clause of the October contract is in the present tense, and that the October contract was a highly profitable one for Coldaire. See Restatement of Contracts, Sections 418, 419. It is not clear from the master's report whether he found that the existence of a claim by Coldaire against Kellett was in dispute at the time of the October contract, although it has certainly been in dispute since. However, there is evidence in the record to sup-

port the conclusion that Kellett in good faith disputed the claim and took the position that it had a cause of action against Coldaire under the April agreement or that it had the right to terminate it on the facts. Therefore, since I feel that the master's final legal conclusion is valid I do not think it would be proper to recommit this proceeding for a more specific finding or further evidence on the point. Certainly, under the Pennsylvania law which I feel is applicable in interpreting the October agreement, a new contract can, of itself, operate as an accord and satisfaction of existing claims even though the new contract is not yet performed. Cf. McNamara v. Uniflow Mfg. Co., 354 Pa. 174, 175, 47 A.2d 133; York Metal & Alloys Co. v. Cyclops Steel Co., 280 Pa. 585, 124 A. 752; Meaker Galvanizing Co. v. Charles E. McInnes & Co., Inc., 272 Pa. 561, 116 A. 400; In re Redmond, D. C., 16 F.Supp. 176. The master's conclusion that in this case the October contract extinguished the right to a proof of claim arising from breach of the April agreement is, I feel, correct. Accordingly, it is unnecessary to deal with his alternative conclusion that there is no basis in fact upon which a measure of damages could be applied for breach of the April contract.

 However, petitioner also vigorously contends that the October agreement was ineffective for any purpose because the obligations listed in Exhibit C had not been agreed upon at the time of signing the contract and because paragraph eight, providing for the possible leasing of part of the Kellett plant by Coldaire, was too vague to be enforceable. However, the master has found that Exhibit C was in existence at the time the contract was executed and delivered by Coldaire's Vice-President and that the latter was in charge of the negotiations between Kellett and Coldaire and had an opportunity to read it. I feel that these findings are correct and that they dispose of Coldaire's first assertion. In addition, I feel that petitioner's contention regarding the effect of paragraph eight must also fall. Assuming, though not deciding, that the provision is too vague to be enforceable, it clearly appears to me to be part of a divisible contract, which would still operate to bar a claim for breach of the April contract. Cf. Friese's Estate, 336 Pa. 241, 9 A.2d 401, 125 A.L.R. 1016; Craig's Estate, 298 Pa. 235, 148 A. 83; Producers Coke Company v. Hillman, 243 Pa. 313, 90 A. 144. The importance of a particular provision in a contract, of course, is vital to resolving the issue of "separability." See 37 Yale L.J. 634, 642. Two factors strongly support the master's conclusion that paragraph eight, even if too vague, need not invalidate the entire contract. First, the parties clearly thought the probabilities high that Wilson Company would rent the premises referred to. Second, even if Coldaire could not enforce the rental provisions, it could still obtain title to all of the raw materials, parts, etc., which it needed to manufacture the cabinets. Paragraph one of the October contract indicates the possibilities of shipping elsewhere at least part of what Coldaire bought. Therefore, I feel that the master's conclusion as to separability is correct. Accordingly, I do not find it necessary to pass upon the interesting suggestion that Wilson's signing a lease with Kellett on October 14 destroyed the basis of present argument. Cf. Kresge v. Taylor, 3 Cir., 194 F. 379.

 The master has also concluded that there is no basis for a claim for conversion of the tools referred to in the amended reclamation petition but that Coldaire should be allowed a claim for $40,260.00, if its petition is amended to request that amount. I feel that the master's conclusions that the trustees committed no tort by refusing to hand over the tools, or even by using them, and that on the facts the sale was ineffective as against them are correct. Cf. 11 U.S.C.A. § 110; Callahan v. Union Trust Co. of Pittsburgh, 315 Pa. 274, 172 A. 684; Shipler v. New Castle Paper Products Corporation, 293 Pa. 412, 143 A. 182; McCullough v. Willey, 200 Pa. 168, 49 A. 944; Buckley v. Duff, 114 Pa. 596, 8 A. 188; In re American Knitting Co., D. C., 23 F.Supp. 793; In re Leppe, D. C., 50 F.2d 975. Further, I do not think that the evidence supports the assertion of petitioner that the trustees waived their right to treat the sale as fraudulent.

 The trustees, however, assert that there is no legal theory to support the

master's recommendation that Coldaire be allowed a claim of $40,260.00, and that, in any event, they are entitled to a chance to offer defenses or possible setoffs to such a claim. I cannot agree with their first contention. Claims arising on a quasi-contractual theory can be proved in these proceedings. See Brown v. O'Keefe, 300 U.S. 598, 606, 57 S.Ct. 543, 81 L.Ed. 827; Stipp v. Doran, 3 Cir., 18 F.2d 83, 84. The inequity of denying Coldaire the property it contracted for and the right to present a claim for the money it paid is apparent. I feel that, for the purposes of the motion to dismiss, it is entitled at least to press its claim for the money advanced. Cf. Buffum v. Peter Barceloux Co., 289 U.S. 227, 237, 53 S.Ct. 539, 77 L.Ed. 1140; In re Peoria Braumeister Co., 7 Cir., 138 F.2d 520, 523; Shipler v. New Castle Paper Products Corporation, supra. Nor do I think it an abuse of discretion to allow an amendment formally presenting a claim for the $40,260.00 paid for the tooling, as the master recommended. The facts upon which the claim is based were set forth in detail in the timely petitions previously filed. Cf. In re Keck, D. C., 23 F.Supp. 121, affirmed 98 F.2d 589, certiorari denied 305 U.S. 646, 59 S.Ct. 148, 83 L.Ed. 417. Accordingly, in this situation I would not feel justified in denying the amendment because it presents a new cause of action. However, I agree with the trustees' contention that they should have the right to present possible defenses or setoffs to this claim. Accordingly, therefore, an order will be entered denying the motion to dismiss, and recommitting this proceeding to the special master for further hearings in conformity with this opinion. At that time, the master should also make explicit findings and conclusions as to the other items of Coldaire's amended reclamation petition, the cabinets, condensing units, and plans and designs. If he concludes that any valid claim exists for these items, possible defenses or setoffs may be presented then, as well.

### Conclusions of Law

1. The October contract between Kellett and Coldaire was an accord and satisfaction of any claim by Coldaire for breach of the April contract.

2. The October contract is not rendered unenforceable or void because of paragraph eight or Exhibit C.

3. Coldaire's proof of claim for breach of the April contract is dismissed.

4. Under applicable law, the trustees had a right to treat the sale of the tools, which were described in the reclamation petition, as fraudulent and ineffective as against them.

5. Coldaire has a possible claim for $40,260.00 for the money it paid to Kellett to purchase the tools.

6. The trustees' motion to dismiss this claim is denied.

7. The claim arising out of the amended reclamation petition is recommitted to the special master to allow possible defenses and setoffs and for disposition of the other items which are a basis of Coldaire's amended reclamation petition.