**In re KELLETT AIRCRAFT CORP.**

No. 22616.

United States District Court
E. D. Pennsylvania.

May 31, 1951.

980

Charles A. Wolfe, Philadelphia, Pa., for trustee.

Joseph J. Brown, Philadelphia, Pa., for Coldaire Corp.

McGRANERY, District Judge.

This case arises on exceptions to the report and recommendation of the special master, dated February 23, 1951, on a motion by the debtor, the Kellett Aircraft Corporation, to dismiss the claims of the Coldaire Corporation. Factual background to these proceedings may be found in the opinions of this court reported in D.C., 77 F. Supp. 959, affirmed 3 Cir., 173 F.2d 689, Id., D.C., 94 F.Supp. 103. The master has, in effect, recommended the granting of the motion in part, and its denial in part, and both parties have filed exceptions.

### Findings of Fact.

1. On April 2, 1946, Kellett and Coldaire entered into a contract whereby the former undertook to manufacture for the latter a quantity of refrigerating cabinets. But in September of 1946, Kellett notified Coldaire that it would not continue production under the April contract.

2. On October 9, 1946, after negotiations between the parties, a new contract was entered into, which has been held to have been an accord and satisfaction of the April contract, 77 F.Supp. 959, affirmed 173 F.2d 689. The October contract contained, inter alia, the following provisions:

"1. Kellett hereby sells and transfers to Coldaire the materials, parts and work in process listed in the schedule attached hereto as Exhibit 'A' and now located in the plant occupied by Kellett, situated in North Wales, Pennsylvania. Coldaire will within thirty days from the date hereof pay Kellett $8,000.00, for said materials, parts and work in process. Full title to and property in said assets shall be transferred to and vest in Coldaire by and upon the execution of this agreement and Coldaire shall thereupon be given immediate possession thereof. * * *

"Kellett represents that said Exhibit 'A' includes all raw materials, parts and work in process on hand on September 18, 1946 applicable to or acquired for the completion of 300 Coldaire Units Model 12D46 and 700 Coldaire Units Model 3C46 under said contract of April 2, 1946, less in each case deliveries already made by Kellett.

"2. Kellett will continue to hold for one year from the date hereof for the account of Coldaire existing stores inventories listed in Exhibit 'B' subject to liens in favor of the R.F.C. or Girard Trust Company or other bank. * * * Coldaire shall have the right to purchase for cash any or all of the parts and raw materials listed in said Exhibit 'B' as it desires during said one year period at the following prices:

"(a) Parts: 50% of their fair replacement cost at the time of purchase by Coldaire.

"(b) Raw Materials: 100% of their fair replacement cost at the time of purchase by Coldaire.

* * * * * *

"3. Coldaire will within thirty days from the date hereof pay Kellett $7,200.00 to secure Coldaire's option to purchase the parts and raw materials listed in Exhibit 'B'. This deposit shall be applied on purchases of the first portions of parts or raw materials subject to said options, but in the event said options are not exercised

shall be retained by Kellett as its sole and absolute property."

"8. If Wilson Cabinet Company or an affiliated company does not rent that part of the premises, machinery and equipment at Kellett's North Wales plant heretofore used or set aside for Coldaire's production, Coldaire shall have the right to lease said premises, machinery and equipment on a basis to be determined by Kellett and Coldaire."

3. On October 18, 1946, Kellett filed its petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and trustees were appointed for the debtor in reorganization and authorized to conduct the business. When the trustees took possession they found the debtor's plant in operation under the October contract. They entered into an oral agreement with Coldaire whereby operation was permitted to continue pending a decision by the trustees on the affirmance or rejection of the contract.

4. On October 31, 1946, the trustees, at a meeting held at the office of their attorney, stated categorically to Coldaire that they proposed to reject the October contract. On November 22, 1946, a petition was filed asking for leave to reject it and such leave was granted by this court.

5. Meanwhile operation under the oral agreement had progressed in a small way only, in part by reason of dispute between Coldaire and the trustees over the use of certain parts and materials. On November 14, 1946, Coldaire discontinued its operation at the debtor's plant.

6. In January of 1947, Coldaire filed a claim against the debtor based on a breach of the April contract. But the claim was disallowed on the ground that the October contract was an accord and satisfaction of the April contract (see finding of fact no. 2). In March of 1950, a proof of claim based on the breach of the October contract was filed, nunc pro tunc, with the permission of the court. In December of 1950, a stipulation was filed by the parties, in which Coldaire undertook to clarify its March claim, and the debtor reserved its right to object to a ruling by the master permitting the filing of the amendment nunc pro tunc.

7. The stipulation of December, 1950, sets forth Coldaire's claim as follows:

"Wherefore, your petitioner claims from Debtor the following relief in the alternative:

"(a) A sum in the approximate amount of $152,000.00 representing the difference between the contract price of the items listed in the exhibits attached to the contract of October 9, 1946, as Exhibits 'A' and 'B', and the fair replacement cost and market value of such items at the time of the rejection of said contracts by the trustees.

"(b) A sum not less than $126,000.00, representing the difference between the cost of manufacturing 922 cabinets, Model No. 3–C–46 and 704 cabinets, Model No. 12–D–46, under the contract of October 9, 1946, and their total market value."

8. The special master has, in effect, recommended that the motion to dismiss be denied with respect to the claim based on the Exhibit "A" items of the October contract, and that the motion be granted as to the claim based on the Exhibit "B" items, and as to the alternative claim in paragraph (b).

## Discussion.

The debtor's motion to dismiss, having been presented at the close of the claimant's evidence, is not properly analogous to a motion to dismiss under Rule 12(b)(6), Fed.Rules Civ.Proc. 28 U.S.C.A.; rather it is analogous to a motion for a directed verdict under Rule 50(b). The issue thus defined is whether, on the evidence adduced by the claimant, under the applicable law, the claimant has made a prima facie case. No decision in favor of the claimant Coldaire may be entered, for the debtor Kellett reserves the right to put in a defense should its motion be denied. Therefore, it is necessary only to determine whether there is an adequate legal and factual basis for the claims presented. It is not necessary to determine the questions relating to the adequacy of the evidence on the measure of damages. So long as the claimant has presented a

claim for which he may recover even nominal damages, there may be no "directed verdict" for the debtor. See Restatement of Contracts, Sec. 328, and Pennsylvania Annotations. Only if the debtor had rested its case, would the issue of damages now be before the court for a final determination, in the event of a denial of the motion to dismiss. Inasmuch as the motion is, in effect, being denied in part, the consideration of the issue of damages is reserved until the claims come up for actual allowance or disallowance.

■ Although the issue is not raised in its formal exceptions, the debtor argues the propriety of the allowance by the special master of the December, 1950, amendment, nunc pro tunc, to the March, 1950, proof of claim. It is urged that the amendment constitutes a new claim filed more than four years after the original proof of claim. However, the merits of permitting Coldaire to file, nunc pro tunc, an amended proof of claim in March of 1950 were fully argued before the special master and before this court, and the court agreed with the master that leave to file should be granted. The December amendment is properly a clarification of the March claim, which fully laid the basis for the claims subsequently particularized in the December amendment. In these circumstances the debtor is in no way prejudiced by the allowance of the filing of the December claim, nunc pro tunc.

On paragraph (a) of the amended proof of claim (finding of fact no. 7), based on the first paragraph of the October contract (finding of fact no. 2), the special master recommended that the motion to dismiss should be denied in so far as the claim relates to Exhibit "A" materials, parts and work in process. In connection with this recommendation, the debtor excepts to the master's finding that the trustees had, on October 31, 1946, notified Coldaire that they proposed to reject the October contract, and that they regarded it as invalid and of no effect. On the basis of this finding the master concluded that the payment of the $8,000 for the Exhibit "A" materials by Coldaire, called for by the contract to be made on or before November 9, was waived, and that Coldaire had a valid claim based on the difference between the value of the Exhibit "A" materials and the $8,000 contract price to Coldaire.

In support of its exception to the master's finding, the debtor quotes findings from the master's report of January 23, 1948, in connection with the validity of the October contract, which are alleged to be inconsistent with the present finding. In that report the master found that the contract was originally considered valid by the parties to it; that performance had begun when the trustees were appointed and took possession; that operations were continued by oral agreement with the trustees "after they took possession and control of the debtor, pending determination by the trustees of the question as to whether these executory contracts should be affirmed or rejected by them"; and that the trustees took no position justifying the conclusion that they regarded the contract as ineffective "during the period when they were considering the advisability of the affirmation or rejection of the said contract." It is urged that the trustees could not have agreed that operations should be continued by Coldaire pending determination of the question of affirmance or rejection of the contract, or that the trustees could not have considered the contract as effective, and at the same time have given notice of an intention to reject. The answer is that these activities were not simultaneous. The period during which the trustees were considering the advisability of disaffirmance antedated October 31, when the notice of intention to reject was given. The conclusion is fortified by reference to other portions of the master's report, wherein he stated:

"During the period of the few days subsequent to their appointment on October 18th, 1946, and prior to October 31st, 1946, the trustees permitted the manufacture of certain numbers of both Models at the debtor's plant, but refused to permit the removal of any cabinets pending trustees' investigation of the situation and the determination of their position with respect to the agreements of October 9th and October 14th.

"On October 31st, 1946, Coldaire and Wilson were notified by the trustees that the contracts of October 9th and October 14th, 1946, were invalid and of no effect."

However, the record is not entirely clear. Coldaire has introduced into evidence paragraphs from the trustees' petition to reject the October contract, wherein it was set forth that operations had continued pursuant to an oral agreement between the trustees and Coldaire, pending determination by the trustees as to whether the October contract should be affirmed or rejected; and further, it was recited that pursuant to that oral agreement Coldaire should pay the trustees the sum of $1,000 as security for the amounts due the trustees on cabinets to be shipped. And it appears from the record that it was on October 31 that the oral agreement was made involving the $1,000 payment. Hence, it would seem from this part of the record that it was also on October 31 that the oral agreement was entered into which permitted operation pending the trustees' decision on rejection of the October contract, in contradiction to the master's finding that on that date notification of intention to reject was given.

However, the master's conclusion involved his consideration of all of the evidence and since there is substantial evidence to support his conclusion, I am not prepared to hold that it is clearly erroneous, despite the fact that some ambiguity apparently exists on the record. Rule 53(e)(2).

▉ Consequently, although the $8,000 which Coldaire was to pay within thirty days was neither paid nor tendered within that time or at any other time, Coldaire has nevertheless established the legal basis for a claim. For, when the trustees notified Coldaire that they would not recognize any title, right or claim under the October contract, it became pointless for Coldaire to make a tender of the $8,000; the law does not require the performance of a vain act. Detwiler v. Capone, 357 Pa. 495, 55 A.2d 380; Ramsey v. Ramsey, 15 Pa.Super. 214; Restatement of Contracts, Sec. 306; Williston on Contracts, Sec. 875. Accordingly, Kellett's exception to the special master's recommendation to deny the motion to dismiss the claim based on the Exhibit "A"

items of the October contract will be overruled.

▉ The master's recommendation for a dismissal of the claim based on the Exhibit "B" items in the October contract rests on the theory that the provision in that contract covering those items called not for a sale, but for an option, to become effective only upon the payment of $7,200 by Coldaire; since the $7,200 was neither paid nor tendered, no option ever came into effect, despite the action of the trustees in repudiating the contract on October 31. But the master has misconstrued the contract. Paragraphs 2 and 3 of the October contract (finding of fact no. 2) may be interpreted as creating an immediately effective option, subject to the condition subsequent of a $7,200 payment within thirty days. And the action of the trustees on October 31, prior to the expiration of the thirty day period, rendered a tender unnecessary. The same result follows if the contract is construed as creating an offer good for thirty days, supported by independent consideration and therefore irrevocable during that period—or in other words, an option on an option. Upon the revocation of the offer by the trustees, Coldaire was not required to indulge in the vain attempt to accept. There is an adequate legal basis for a claim based on the Exhibit "B" items in the October contract, and Coldaire's exceptions to the master's recommendation for dismissal of this claim will be sustained.

▉ Coldaire's claim under paragraph (b) of the amended proof of claim of December, 1950, is in the alternative to the claim under paragraph (a), and is for the difference between the cost of manufacturing certain cabinets under the October contract and the value of such cabinets for purposes of sale by Coldaire. The master has recommended dismissal on the ground that the basis of the claim is that Coldaire was unable to manufacture the specified cabinets because Kellett did not make available its factory premises, and Kellett, in the October contract, made no such undertaking. Coldaire points out that the special master has previously found that "the primary purpose of the October 9th 1946, agreement was to enable petitioner to ob-

984

tain the use of debtor's plant, machinery and equipment for the purpose of manufacturing cabinets of the type in controversy." But the principal methods indicated in the contract for effecting this purpose were the continuation of the business on the basis of a lease agreement between Kellett and Wilson,[1] or, failing that, on the basis of a lease agreement between Kellett and Coldaire. The former lease was in fact executed, but before any extensive operation occurred, a compromise settlement of the lease was made between the parties. Coldaire can make no claim on that score. If Coldaire has any claim based on the frustration of the purpose of the October contract, it must be based on the breach of Kellett's agreement with Coldaire. And the significant part of that agreement, in relation to the claim under paragraph (b), is contained in paragraph 8 of the October contract (second finding of fact), wherein it was provided that if Wilson did not rent the specified premises, machinery and equipment, Coldaire should have the right to a lease "on a basis to be determined by Kellett and Coldaire". Assuming that the lease to Wilson did not destroy the basis for Coldaire's right to a lease, the question remains: what right to a lease did Coldaire acquire under the October contract? Coldaire acquired no right to a lease and Kellett incurred no obligation to grant one because the terms of the contract permitted either party to refuse to agree to any terms for a lease. McNeely v. Bookmyer, 292 Pa. 12, 140 A. 542; Pennsylvania Lubricating Co. v. Wilhelm, 255 Pa. 390, 100 A. 93; Zoebisch v. Rauch, 133 Pa. 532, 19 A. 415; Restatement of Contracts, Sec. 32; Williston on Contracts, Sec. 45. There was no valid contract for the leasing of the premises, machinery and equipment to Coldaire, and Kellett is not in default.

But the debtor urges that the profit which it could have derived from the manufacture of the cabinets in question under the October contract, the basis of its claim under paragraph (b), was dependent upon the trustees' performance of other obligations in addition to the mere leasing of plant facilities. For example, the agreement contemplated that Coldaire would be permitted to have the use of tooling and drawings required for the manufacturing operations; that Coldaire was given the privilege of purchasing materials, parts and work in process at prices substantially below their cost on the open market. But it is apparent that the sine qua non of Coldaire's manufacturing operation was the use of the Kellett premises and equipment, an objective which has been found to have been the primary purpose of the October contract. Nor does Coldaire assert that the breach of the other provisions of the contract alone prevented it from completing its manufacturing operations. Accordingly, since Kellett breached no obligation to lease its premises to Coldaire, the basis for recovery under paragraph (b) disappears, and Coldaire's exception to the special master's recommendation that the claim be dismissed will be denied.

Conclusions of Law.

1. The exceptions of the Kellett Aircraft Corporation to the report and recommendation of the special master, dated February 23, 1951, are overruled.

2. The first and fifth exceptions of the Coldaire Corporation are sustained, and the remainder, overruled.

3. The motion of the Kellett Aircraft Corporation to dismiss the claims of the Coldaire Corporation is granted as to the claim set forth in paragraph (b) of the stipulation of December 27, 1950, and denied as to the claims set forth in paragraph (a).

4. The matter is recommitted to the special master for the presentation of the debtor's evidence.

1. "* * * the parties clearly thought the probabilities high that Wilson Company would rent the premises * * *", for the purpose of carrying out Coldaire's manufacturing operation, 77 F. Supp. 959, 963.