REID, Judge.
James I. Wilson brought this action against the heirs of Morris Munday for payment of costs incurred and services allegedly rendered to the said Morris Mun-day over a period of nine years just prior to his death for which plaintiff was not remunerated. Plaintiff’s petition alleges that Morris Munday died on April 14, 1965; that no last will and testament was found or offered for probate and it was thus presumed that he died intestate and the defendants are his presumptive heirs seeking possession without administration of the estate. He further alleges that the defendants, through one Marguerite Dejean as their agent and attorney, alienated a portion of the movable property of the estate, which acts constituted unconditional acceptance of the estate of said Morris Munday. The alleged services rendered and costs incurred by plaintiff include the performance of general labor and duties of farm and cattle manager on the 150 acre farm owned by the decedent, labor and supervision of building fences, building and repairing buildings and improvements, personally feeding, branding, marketing and general care of cattle, management of the farm business and records, and also personal services rendered the decedent because of his advanced age and ill health. Plaintiff claims that the estate of Morris Munday was enriched by his services and he seeks judgment in the sum of $37,800 for remuneration of services rendered and in the alternative for judgment for $37,800 on the basis of quantum *136 meruit, on the grounds that one who renders valuable services for another for a series of years on the promise of the one benefited that compensation for such services will be provided for in the last will of the person receiving the benefits of such services, and when this person dies without making such provision, an action may be maintained for the value of such services against the succession of the deceased. In the second alternative, plaintiff seeks judgment for $37,800 on the basis of unjust enrichment. He also asked for and obtained a writ of attachment of the immovable property belonging to the estate of the deceased.
The defendants filed an answer of general denial and propounded a number of interrogatories to be answered by the plaintiff. Defendants also filed a plea of prescription of one year under Article 3534 of the Revised Civil Code and, in the alternative, three years under Article 3538, which they have abandoned on appeal.
After two full days of trial, including testimony from some 22 witnesses, the Trial Judge rendered judgment in favor of plaintiff James I. Wilson and against the defendants in the sum of $27,075 for personal services rendered the decedent Morris Munday and the enrichment of his estate, less a credit of $400 for a calf or calves donated, and fixed the expert witness fees of Dr. R. K. Munson and Mr. McWillie Chambers at $25.00 each and taxed the same as costs, all costs to be paid by defendants. The defendants have appealed from said judgment. The plaintiff answered the appeal, seeking an increase in the award.
Counsel for the defendants asked that the witness be sequestered and plaintiff was called as the first witness on his own behalf. He testified that he was 37 years of age, had a high school education, was an electrical contractor by occupation, and had had 20 years experience as a cattleman. He had known Mr. Morris Munday prior to entering military service, and testified that in the Spring of 1956 he went to visit Mr. Munday and found him ill and started staying with him, caring for him personally and doing whatever he asked about the farm. After Mr. Munday became well enough to do his own work, plaintiff left and in the Summer of 1956 he returned to the Munday farm and remained there until the time of Mr. Munday’s death. When asked what agreement was made regarding his salary or compensation, he said that there was no talk of actual salary but he was led to believe there would be compensation for him in a will made by Mr. Munday. At several different times in his testimony, the plaintiff mentioned numerous occasions when Mr. Munday told him not to worry about buying cattle for himself, that “you will always have a place to stay.”
The plaintiff’s testimony was corroborated by Mr. Lesslie Young Woodward who testified that he asked Mr. Munday, “Now, Bud, this is a personal question. How about Pete?” and Mr. Munday answered: “My God, Wesley, you know how Pete has taken care of me, you don’t have to worry about it, Pete is well taken care of, I have got it all fixed.”
Dr.. Richard K. Munson verified the fact that plaintiff was with Mr. Munday nearly every time he was seen by Dr. Munson, whether at his office or at Mr. Munday’s home.
Mr. McWillie Chambers, manager of Dominique Stock Yard, testified, as to the stock sold by Mr. Munday- — the number sold and price received. He testified that he knew of his own knowledge that “they really kept good care of the cattle.”
Several neighbors verified Mr. Wilson’s testimony relative to the amount of work performed and personal services rendered Mr. Munday.
There was, of course, contradictory testimony by the defendants regarding the desire of Mr. Munday for the disposition of his estate upon his death.
The first question to be decided is whether the petitioner is entitled to com *137 pensation based on the proposition that one who renders valuable services for another for a series of years on the promise of the one benefited that compensation for such services will be provided for in the last will of the person receiving the benefits of such services, and when this person dies without making such provision, an action may be maintained for the value of such services against the succession of the deceased.
Under LSA-R.S. 13:3721 parole evidence may be received to prove any debt or liability of a deceased person against his succession representative, heirs or legatees when such suit is brought within one year of the date of decease. Accordingly, R.S. 13 :3722 provides that when parole evidence is admissible under the provisions of Article 3721, the debt or liability of the deceased must be proved by the testimony of at least one credible witness other than the claimant, and other corroborating circumstances.
While it is well established that the above principles are true, this Court does not believe that the facts in this case warrant compensation on this basis. The first requirement for recovery under this theory is that there be a promise on the part of the person being benefited that provision for the benefactor will be placed in a last will and testament. The second requirement is that there be testimony by one credible witness and other corroborating circumstances. In the present case there is only the testimony of Mr. Wilson which would tend to show a promise on the part of the deceased to the petitioner:
“Q. Mr. Wilson, what agreement was made between you and Mr. Munday in the summer of 1956?
A. The way we got an agreement, I was sitting there one night talking to him and I said, ‘Mr. Munday, how about me putting some cattle on your farm?’ He knew I could handle them, work with them. He told me, ‘no boy, you will never have to buy any cattle,’ he said ‘you will always be here.’ ”
While Mr. Wilson may have been led to believe that he would be remembered in the last will of the deceased, this alleged statement by Mr. Munday seems to us to be too ambiguous as to constitute such a promise and we do not feel that recovery should be allowed on this basis. However, we do feel that there was indeed a valuable service rendered by the plaintiff to the deceased and as pointed out by the Trial Judge, it is very likely there would have been no cattle operation had it not been for these services. Recovery should, therefore, be based on the doctrine of unjust enrichment.
In 17 C.J.S. Contracts, § 6, page 566, we find the following:
“Contracts implied in law, or, as stated supra § 4, more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. The courts employ the fiction of quasi or constructive contract with caution.
sf» H» ^
“Generally, quasi or constructive contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. The obligation to do justice rests on all persons, and if one obtains money or property of others with *138 out authority, the law, independently of express contract, will compel restitution of compensation. “In this respect, the terms 'restitution’ and 'unjust enrichment’ are modern designations for the older doctrine of quasi contracts, and the substance of an action for 'unjust enrichment’ lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him. Quasi-contractual obligations may be imposed despite, and frequently in frustration of, the intention of the parties, and no promise of repayment need be shown.”
This authority was cited in the case of Martin v. Bozeman, La.App., 173 So.2d 382, upon which the defendants rely for authority for the purpose of defeating recovery on this basis. In that case recovery was disallowed on the basis that the doctrine of unjust enrichment did not apply to particular circumstances of that case, that is, that the services rendered were gratuitous. In denying recovery in that case this Court said:
“Recovery through the application of the doctrine of unjust enrichment, which is based upon the concept that the person enriched must return to the person at whose instance he was enriched that which served to enrich him, is defeated and does not apply in the event the services, which would normally give rise to an obligation to pay, are rendered gratuitously. In the presence of a gratuitous intent on the part of the party performing the services, circumstances which would otherwise give rise to a quasi-contractual obligation to pay for the services rendered, give rise merely to an imperfect obligation (LSA-C.C. art. 1757) incapable of enforcement in a court of law. See: Elam v. Shushan, (1944) 205 La. 471, 17 So.2d 713; Stipp v. Doran, (1927) 3 Cir., 18 F.2d 83, at page 84, citing Elliot on Contracts, Vol. 1, § 18; Vol. 2, § 1355; Board of Highway Commissioners v. City of Bloomington, 253 Ill. 164, 97 N.E. 280, Ann.Cas. 1913A, 471; In Re Kellett Aircraft Corp., D.C., 94 F.Supp. 103, at page 109. In Tulane Law Review, Vol. 39, at page 62, the author makes the statement, without cited authority, that recovery will be allowed ‘ * * * for any benefit voluntarily accepted unless conferred “animo donandi”.’ We accept this statement as expressive of the rule laid down in the Elam case and the rule which we accept as determinative of the appellant’s inability to recover for those enrichments which may have been received by the decedent at appellant’s expense during the period prior to the death of his (plaintiff’s) first wife. We feel that these comments dispose of plaintiff’s second specification of error.”
 Counsel for the defendants in the present case tried to establish a gratuitous intent on the part of the plaintiff James Wilson so as to reconcile the facts in the present case with the holding in the Martin v. Bozeman case, supra. The two cases are, however, readily distinguishable. In Martin v. Bozeman, the petitioner cared for the deceased during the period for which recovery was denied at the insistance of his first wife who looked upon the deceased practically as a mother. Under such circumstances it is easily seen there was indeed a gratuitous intent. In the present case, however, there was no such relationship between the petitioner and the deceased Mr. Munday. Counsel for defendants rely upon the enjoyment the plaintiff admittedly received from working with cattle to establish a gratuitous intent. This, however, is based purely upon conjecture and it would certainly be inequitable to deny a person compensation simply because he enjoys the work which he performs. There is no doubt that the estate of Mr. Munday was greatly enriched by the services rendered by the plaintiff and as a result plaintiff should be rewarded for his endeavors.
This brings us to the question of quantum. The Trial Judge allowed $135.00 per month *139 for 95 months, or a total of $12,925.00, for farm services, and $5.00 per day or $150.00 per month for 95 months for a total of $14,-250.00 for nursing care and personal attention, and rendered judgment in the sum of $27,075.
While we feel that the amount allowed for work performed as farm services is correct based upon the expert testimony, we feel that the compensation for the personal services are excessive and, in fact, amount to more than plaintiff asked for. In plaintiff’s original petition and the brief on appeal, he shows that the amount asked for personal services is based on $100.00 per month or $3.33 per day for the period July 1956 to July 1962, and $150.00 per month or $5.00 per day for the period July 1962 to April 14, 1965. The Trial Judge, however, allowed $150.00 per month for 95 months.
Plaintiff’s own testimony shows that while he did actually render valuable personal services to the deceased, that these services were not necessary at' all times. Compensation at the rate of $2.50 per day or $75.00 per month for the entire period of 105 months would he more in line with the personal services rendered. These services were not rendered on a full time bases. While he did claim to he on call 24 hours each day, the evidence shows that he seldom actually performed such services except at night and on occasions when it was necessary to take Mr. Munday to his doctor. It is, of course, very difficult to assess a value for such services, but in view of all the circumstances we feel that an award of $2.50 per day for the entire period is adequate and just.
-The Trial Judge reduced his award by giving credit of $400 in favor of the defendants “for calf donated.” Such a credit was not sought in the lower Court nor on this appeal. We feel the lower Court was in error in awarding such credit.
For the reasons herein assigned, the judgment appealed is amended by reducing the award for personal services from $14,250 to $7,875; is reversed insofar as it gives a credit of $400 for calf donated; and in all other respects is affirmed.
Reversed in part, amended in part and affirmed in part.